# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

IN RE:  §
     §
**IO at TECH RIDGE, LP**  §  **CASE NO. 17-11540-tmd**
   *Debtor*  §  **(Chapter 11)**
     §

## DEBTOR'S MOTION FOR (I) ORDER APPROVING (A) BID PROCEDURES, INCLUDING PROCEDURES FOR SELECTION OF STALKING HORSE PURCHASER, (B) PROCEDURES FOR ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND RELATED NOTICES, (C) NOTICE OF AUCTION, STALKING HORSE HEARING AND SALE HEARING, AND (D) RELATED RELIEF AND (II) ORDER (A) APPROVING THE SALE OF REAL ESTATE AND RELATED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363(b), (f), AND (m), (B) APPROVING ASSUMPTION, ASSIGNMENT AND SALE OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO BANKRUPTCY CODE SECTIONS 363 AND 365 AND RELATED CURE AMOUNTS, AND (C) GRANTING RELATED RELIEF

TO THE HONORABLE TONY M. DAVIS, U.S. BANKRUPTCY JUDGE:

IO at Tech Ridge LP ("Debtor") respectfully represents as follows:

### Jurisdiction and Venue

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

3. Pursuant to sections 105, 363, and 365 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"). Debtor hereby moves the Court for the entry of an order (the "**Bid Procedures Order**"), substantially in the form attached hereto as **Exhibit A**, (i) approving the bid procedures (the "**Bid Procedures**," substantially in the form attached to the Bid Procedures Order

as **Exhibit 1**) for the sale of real estate and certain related assets owned by the Debtor, including the procedures for the selection of stalking horse purchasers, (ii) approving the procedures for the assumption, assignment, and sale of executory contracts and unexpired leases, including notice of proposed cure costs (the "**Assumption and Assignment Procedures**"), (iii) establishing a date for an auction (the "**Auction**"), a hearing to approve the Debtor' selection of a Stalking Horse Purchaser, if any, and the provision of Bid Protections (as defined herein) to such Stalking Horse Purchaser, if necessary (the "**Stalking Horse Hearing**"), and a final hearing (the "**Sale Hearing**") to approve the sale of the "**Property**" as more fully defined herein (the "**Sale Transaction**"), and (iv) approving the form and manner of notice of the Auction, Stalking Horse Hearing, Sale Hearing, and the Assumption and Assignment Procedures. The Debtor also hereby moves the Court, pursuant to Bankruptcy Code sections 105, 363, and 365, Bankruptcy Rules 2002, 6004, and 6006, for the entry of an order (the "**Sale Order**"), substantially in the form attached hereto as **Exhibit B**, (i) approving the sale of the Property free and clear of all liens, claims, encumbrances, and other interests, (ii) approving the assumption, assignment, and sale of certain executory contracts and unexpired leases pursuant to Bankruptcy Code sections 363 and 365 and related cure amounts, and (iii) granting related relief.

**Background**

**A.      General Background Regarding the Debtor**

4.      On December 11, 2017 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code. On December 21, 2017 (the "**Conversion Date**"), and at the request of the Debtor, this case was converted by order of the Bankruptcy Court to a case under Chapter 11. The Debtor is acting as Debtor-in-Possession, and no trustee or examiner has been appointed since the Conversion Date. No creditors committee has been formed or appointed in this case.

**B.    Acquisition of Property and Intended Business Operations**

5.      Debtor was formed to own and build a 26 building, 351 unit apartment complex (the "**Project**"). In connection with such activities, Debtor acquired approximately 28 acres of real estate (the "**Real Estate**") in North Austin with the street address of 12600 McCallen Pass, Austin, Texas. The development of the Project was to be, and was, partially funded through a HUD endorsed loan acquired from Berkadia Commercial Mortgage LLC ("**Berkadia**") in the original principal amount of $33,399,400.00 (the "**Berkadia Loan**"). The Berkadia Loan was secured by, among other things, by the Real Estate and related assets.

6.      On or about August 21, 2014, Debtor and ICI Construction, Inc. ("ICI") entered a Construction Contract (the "**Construction Contract**") for the purpose of constructing the Project, and construction of the Project was commenced. Debtor asserted that ICI failed to perform its obligations under the Construction Contract, and Debtor terminated the Construction Contract on or about July 15, 2016. At the time of the termination of the Construction Contract, Debtor believes that the Project was approximately 53% complete and several months beyond the date when construction was to have been completed. On July 22, 2016, Debtor filed an action in Travis County District Court against ICI, and later amended its claims to include an action against Hartford Fire Insurance Company, who had issued a performance bond in favor of Debtor. ICI filed counterclaims against the Debtor for allegedly wrongfully terminating the Construction Contract, and filed a lien claim against the Real Estate for amounts that they asserted were due to them under the Construction Contract and were unpaid. After the termination of the Construction Contract, all construction activities terminated, and although Debtor attempted to find a replacement contractor to complete the Project, the Project has been in a state of partial construction for over a year as the litigation proceeded. Debtor secured the Project by fencing it

and providing security to protect the construction materials that were left on site at the time of the termination of the Construction Contract.

7.      Over the several month periods following the termination of the Construction Contract, Debtor continued to make payments to Berkadia and to pay taxes and costs for protecting the Project. In addition, Debtor attempted to negotiate with Berkadia and HUD (whose approval was required in order insure support of the Berkadia Loan) to resolve the Berkadia Loan and to proceed with the litigation over the Project. The negotiations were often frustrated by the inability to receive timely responses from HUD. In the summer of 2017, HUD insisted that the Debtor commence making payments of principal, in addition to interest on the Berkadia Loan. Debtor was unwilling and unable to fund these additional capital requirements under the circumstances, but Berkadia (likely waiting on direction and approval from HUD) did not take any action to foreclose or otherwise deal with the dangerous situation at the Property. Given the limbo that existed with respect to the construction and the disposition of the Project, Debtor elected to file for Chapter 7 bankruptcy and dispose of the Project in that manner.

8.      The Chapter 7 trustee, after reviewing the situation and with continued inactivity by Berkadia and HUD to foreclose on the Project, moved to abandon the Property. Abandonment would have returned the Property to the Debtor, which would then have been responsible for the same type of expenses and activities necessary to protect the public from the dangers of a partially constructed Project, but without the ability to attempt to compel a disposition. The Debtor elected to convert the bankruptcy case to a Chapter 11 proceeding in order to proceed with the disposition of the Project.

9.      Since the conversion of the case to a proceeding under Chapter 11, Debtor has been attempting to negotiate with Berkadia towards a disposition of the Project. To date, no agreement

has been reached, Berkadia has not moved for relief from the automatic stay nor sought to take control or foreclose on the Project, and has not consented, despite requests, to a sale process that will result in the disposition of the Project. Debtor has not contracted with a broker, but has received several inquiries requesting information and expressing interest in purchasing the Project, and has received two letters of intent indicating an interest in purchasing the Project. None of the inquiries about the Project have come from entities that are related to the Debtor or its members. Counsel believes that there is significant interest in the Property due to its location, and Debtor believes and asserts that it can sell the Project in the short term for an amount which will substantially reduce or eliminate the debt to Berkadia and to HUD

C.    **Proposed Sale Process and Issues Related to Sale**

10.    **Proceeds of Sale**. By this Motion, Debtor seeks to sell the Real Estate and all improvements and construction materials that are located on the Real Estate (the "Property"). The Debtor is not able to provide an estimate of the gross proceeds anticipated from the sale at this time. Each of the Letters of Intent received by the Debtor prior to this Motion proposes a purchase price which is lower than the debt owed to Berkadia which the Debtor calculated on the initial filing date to be $15,101,358.60. However, Debtor believes that in a competitive sales process, the actual purchase price will likely exceed the amounts contained in the two Letters of Intent. The Debtor requests by this Motion that the net sales proceeds shall be remitted to Berkadia at closing. However, to the extent that Berkadia does not voluntarily agree to eliminate or limit its credit bid rights under 11 U.S.C. § 363(k), Debtor requests that a portion of the sales proceeds be withheld so that Debtor may attempt to surcharge the proceeds with the costs of sale and fees related to this bankruptcy proceeding.

11.    **Debt Structure of Debtor**. A brief description of the debtor's debt structure, including the amount of the debtor's secured debt, priority claims and general unsecured claims

are as follows: Berkadia claims to hold secured debt of approximately $15,101,358.60; outstanding ad valorem taxes for 2017 are approximately $167,211.57. Additionally, ICI asserts a disputed Mechanics and Materialman's lien in the amount of $5,673,393.64. At least one sub-contractor, Power Design, while asserting a claim against the payment bond obtained by ICI for the benefit of subcontractors has asserted a contingent Mechanics and Materialman's lien against the Real Estate in the amount of approximately $1,000,000.00. Such lien and claim is also disputed by the Debtor. Unsecured claims at the time of filing were approximately $63,410.98, excluding the under-secured claims of the parties asserting liens, both disputed and undisputed. These amounts are preliminary, unaudited, and represent the Debtor's best estimates at the time of this filing.

12. **Negotiations and Marketing.** Prior to the filing of the Bankruptcy case and as described above, Debtor did not market the Project. ICI, as part of discussions relating to the dispute over the Construction Contract, advised Debtor of parties that were interested in buying the Property, and drafts of letters of intent were exchanged, but no agreements were ever reached. Debtor has not undertaken any formal marketing efforts, but has received inquiries from over 10 prospective purchasers, and has proposed two Letters of Intent. Under the circumstances and given the amounts contained in the Letters of Intent and the potential that the purchase price will not exceed the Berkadia debt, Debtor does not believe that it is necessary to hire a broker, or to provide more formal marketing efforts, and that under the circumstances a relatively quick sale of the Property can be achieved for a significant amount. Given the on-going costs of preserving and protecting the Project, which is currently being funded by the general partner of the Debtor without significant hope of recovery of such costs, the Debtor requests that the Court approve the process outlined below.

13.     **Proposed Sale**. Debtor proposes that a sale of the Property be an all cash sale, on an AS IS basis, with the successful bidder (the "Purchaser") to assume all closing costs, including any title policy, and that the closing occur within 30 days or less of the date when such Purchaser is approved by the Court. Debtor proposes that the proceeds of sale (except as provided above in the event that a surcharge is requested against Berkadia) be disbursed at the time of closing for the payment of taxes, and against the liens asserted in the order of priority, but with all monies that might be payable to parties asserting disputed liens (if any) to be retained or escrowed pending resolution of the lien disputes or claims. No entities or individuals related to the Debtor shall participate in potential bidders.

14.     The Debtor will prepare a form asset purchase agreement (the "**Asset Purchase Agreement**," which will be filed in this case and provided to all prospective bidders (each, a "**Potential Bidder**[1]") in connection with a marketing process for the Property. Potential Bidders will be required to submit to the Debtor an executed Asset Purchase Agreement (a "**Modified Asset Purchase Agreement**") reflecting the terms upon which the Potential Bidder would seek to effect a purchase of the Property, but no later than April 30, 2018 by 5:00 p.m. (prevailing Central Time) (the "**Bid Deadline**"). The Debtor will also entertain entering into an agreement (collectively, the "**Stalking Horse Agreement**") with one stalking horse purchaser (the "**Stalking Horse Purchaser**"), as may be determined by the Debtor in its business judgment, for all of the Property. Any such proposed Stalking Horse Agreement would be with an entity that is unaffiliated with the Debtor. Any and all Potential Bidders interested in becoming a Stalking

---

[1] The Debtor is in ongoing discussions with several parties who may be interested in serving as the Stalking Horse Bidder. If the Debtor selects a Stalking Horse Bidder prior to the hearing on this Motion, a form of asset purchase agreement which contemplates the Stalking Horse bid may be filed which will then constitute the Asset Purchase Agreement hereunder.

Horse Purchaser must submit a Qualified Bid by April 6, 2018 by 5:00 p.m. (prevailing Central Time). The Debtor proposes to designate any Stalking Horse Purchasers on April 18, 2018.

15.    Upon the selection of a Stalking Horse Purchaser, the Debtor will file and serve a notice that includes (i) the identity of the proposed Stalking Horse Purchaser selected, (ii) a summary of the key terms of the Stalking Horse Agreement, (iii) a summary of the type and amount of bid protections (the "**Bid Protections**"), if any, being offered to the proposed Stalking Horse Purchaser, (iv) a summary of any necessary modifications or amendments to the Bid Procedures, and (v) a copy of each Stalking Horse Agreement. The Debtor requests that the Court set a hearing during the week of April 23, 2018 (the "**Stalking Horse Hearing**"), or such other time as the Court is available, to approve any such Stalking Horse Purchaser, Stalking Horse Agreement, and accompanying Bid Protections on an expedited basis. The Debtor requests that the Court set a deadline for the filing of any objections to the approval of any Stalking Horse Purchaser, Stalking Horse Agreement, and Bid Protections no later than April 20, 2018 at 5:00 p.m. (prevailing Central Time). In the event that Berkadia does not consent to the proposed sale or agree to limit its credit bid rights, and is the ultimate purchaser at the sale. Debtor requests that this Court establish deadlines to allow Debtor to assert a claim to surcharge the proceeds of the sale for any breakup fee otherwise payable to an approved Stalking Horse and for the costs and expenses related to the sale of the Property pursuant to 11 U.S.C. § 506(c). Except for the foregoing surcharge, Debtor does not request that the Court limit the rights of Berkadia, or HUD to the extent that it has succeeded to the rights of Berkadia under the Berkadia Loan, to credit bid the debt secured by the Property.

16.    In the event that Debtor obtains Qualified Bids, and regardless of whether a Stalking Horse is selected, Debtor proposes to an Auction of the Property on May 2, 2018 at the

office of Debtor's Counsel. The Debtor proposes to conduct the Sale Hearing with any Qualified Bidders allowed to participate with the highest bidder being determined by the Debtor. The Debtor requests that the Court schedule the Sale Hearing for May 8, 2018 at 10:00 a.m. (prevailing Central Time) or such other time as the Court is available. The Debtor may adjourn the Sale Hearing at any time in its discretion without further notice.

### The Bid Procedures

17.     By this Motion, the Debtor request entry of the Bid Procedures Order, which will, among other things, establish the following timeline:[2]

| Proposed Sale Timeline | |
| --- | --- |
| Granting of Bid Procedures Motion | March 20, 2018 |
| Deadline to Serve Sale Notice and Form Asset Purchase Agreement | March 21, 2018 |
| Stalking Horse Bid Deadline | April 6, 2018 |
| Stalking Horse Designation Deadline | April 18, 2018 |
| Stalking Horse Objection Deadline | April 20, 2018 |
| Stalking Horse Hearing (if required) | Week of April 23, 2018 |
| Bid Deadline | April 30, 2018 |
| Auction (if required)/Selection of Final Bid - either with Stalking Horse or proceeding with No Floor Bid | May 8, 2018 |
| Notice of Assumption and Assignment | May 11, 2018 |
| Deadline to File Auction Results | May 9, 2018 |
| Sale Objection Deadline | 2 business days prior to Sale Hearing |
| Sale Hearing | To be Determined |

---

[2] Capitalized terms used, but not otherwise defined, in this timeline shall have the meaning ascribed to such terms in the Bid Procedures. To the extent there are any ambiguities or inconsistencies between this summary and the Bid Procedures, the terms of the Bid Procedures shall govern in all respects

| Entry of Sale Order | May ___, 2018 |
|---|---|
| Consummation of Sale | June 1, 2018 |
| Assumption and Assignment Objection Deadline | May 18, 2018 |
| Hearing to Determine Objections to Assumption and Assignment of Executory Contracts | May 31, 2018 |

18.     The Bid Procedures are designed to maximize value for the Debtor's estate while ensuring an orderly sale process. The Bid Procedures describe, among other things, the procedures for parties to access information, the manner in which Potential Bidders and bids become "Qualified," the procedures for receipt and negotiation of bids received, the conduct of any auction, the selection and approval of any ultimately successful bidder, and related deadlines (the "**Bidding Process**"). The Bidding Process affords the Debtor a sufficient opportunity to pursue a sale process that will maximize the value of the Property for the benefit of their estate under the circumstances.

19.     Certain of the key terms of the Bid Procedures are highlighted below:

      i.   **Diligence**: Upon execution of a liability waiver containing terms satisfactory to the Debtor, any prospective bidder identified by the Debtor as reasonably likely to be a Qualified Bidder (as defined in the Bid Procedures) that wishes to conduct due diligence on the Property may be granted access to the Property for the purpose of non-destructive examination at a time to be arranged by the Debtor.

     ii.   **Bid Deadline**: Any person or entity interested in participating in the Auction must submit a Qualified Bid (as defined in the Bid Procedures) on or before April 30, 2018 at 5:00 p.m. (prevailing Central Time) in writing, to (i) the attorneys for the Debtor, Waller Lansden Dortch & Davis LLP, Attn: Eric J. Taube, 100 Congress Avenue, 18th Floor, Austin, Texas 78701, eric.taube@wallerlaw.com. The Debtor may, with the consent of any designated Stalking Horse Purchaser, if any, extend the Bid Deadline, but shall promptly notify the Stalking Horse Purchaser and all Potential Bidders of any such extension.

iii. **Auction Qualification Process**: To be eligible to participate in the Auction, each Potential Bidder must be determined by the Debtor to satisfy each of the conditions set forth below:

  a. Identification of Assets and Liabilities, Purchase Price, and Desired 365 Contracts: Each Potential Bidder must submit a bid in writing that must be a bid for the entirety of the Property for cash at closing, and identify a proposed list of Desired 365 Contracts and proposed adequate assurance of future performance if any. A Stalking Horse Purchaser must submit its bid by no later than April 6, 2018 at 5:00 p.m. (prevailing Central Time). All bidders must complete its due diligence prior to the Sale Hearing. There shall be no other provision for the completion of due diligence after the Bid Deadline.

  b. Identification of Bidder: Each Potential Bidder must fully disclose the legal identity of each entity that will be bidding or otherwise participating in connection with such bid, and the complete terms of any such participation, and must also disclose any connections or agreements with the Debtor, any other known Potential Bidder or Qualified Bidder, and/or any officer or director of the foregoing.

  c. Modified Agreement: Each Potential Bidder must submit to the Debtor an irrevocable offer in the form of an Asset Purchase Agreement, including all exhibits and schedules contemplated thereby (other than exhibits and schedules that by their nature must be prepared by the Debtor) and a marked copy of the Asset Purchase Agreement reflecting the differences between the submitted Asset Purchase Agreement (the "Modified Asset Purchase Agreement") and the Asset Purchase Agreement. For any bid that requires the assumption and assignment of executory contracts or unexpired leases, the Potential Bidder must identify which executory contracts and/or unexpired leases are to be assumed and assigned and provide evidence establishing its ability to provide adequate assurance of performance of such executory contracts or unexpired leases. Any Potential Bidder who does not intend to be considered as a Stalking Horse Purchaser must delete all Bid Protection provisions from its Modified Asset Purchase Agreement.

  d. Proof of Financial Ability to Perform: Each Potential Bidder must state that it is financially capable of consummating the transaction contemplated by the Modified Asset Purchase Agreement, detail the source(s) of funds that will be used to consummate the transactions, and include satisfactory evidence of committed financing or other financial ability to consummate the transactions in a timely manner. Each Potential Bidder must expressly acknowledge and represent that the Potential Bidder (i) has had an opportunity to conduct any and all due diligence relating to the Property prior to making its bid, or if the Debtor has not designated a Stalking Horse Purchaser, any Successful

Bidder at the Auction may certify that it has performed any and all due diligence until the conclusion of the Auction, (ii) has relied solely upon its own independent review, investigation, and/or inspection of the Property in making its Bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Property, except as expressly stated in the representations and warranties contained in the Modified Asset Purchase Agreement ultimately accepted and executed by the Debtor. Bids must include evidence of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Modified Asset Purchase Agreement and may not contain any condition to closing of the transaction on the receipt of any third party approvals (excluding required Court approval and any required governmental and/or regulatory approval, if any) or any financing contingencies of any kind.

e. Good Faith Deposit: Each Potential Bidder must provide a good faith deposit (the "**Good Faith Deposit**") in the form of a certified or bank check (or other form acceptable to the Debtor in its sole and absolute discretion) payable to the Debtor in an amount equal to ten (10%) percent of the purchase price offered to purchase the Property. All Good Faith Deposits shall be held in a segregated account by the Debtor until no later than ten (10) days after the Sale Hearing and thereafter returned to the respective bidders in accordance with the Bid Procedures, unless the bidder has been selected as the Back- Up Bidder (as defined below).

iv. **Potential Stalking Horse Bid**: The Debtor will entertain the possibility of entering into one or more Stalking Horse Agreements with one of the Qualified Bidders. Any and all Potential Bidders interested in becoming a Stalking Horse Purchaser must submit a Qualified Bid by April 6, 2018 at 5:00 p.m. (prevailing Central Time). Stalking Horse Purchaser must be so designated by the Debtor by April 18, 2018 at 5:00 p.m. (prevailing Central Time).

a. If the Debtor enters into an agreement with a Stalking Horse Purchaser, the Debtor will file and serve notice of the proposed Stalking Horse Agreement on the Notice Parties (as defined herein). The notice will include (i) the identity of the proposed Stalking Horse Purchaser selected, (ii) a summary of the key terms of the Stalking Horse Agreement, (iii) a summary of the type and amount of Bid Protections, if any, being offered to each proposed Stalking Horse Purchaser, (iv) a summary of any necessary modifications or amendments to the Bid Procedures, and (v) a copy of each Stalking Horse Agreement.

b. The Debtor may determine that it is appropriate to provide the Stalking Horse Purchaser with Bid Protections, including a break-up fee or expense reimbursement. All Bid Protections will be negotiated at arm's length with Potential Bidders and with the intent of maximizing the value to be received by the Debtor, and the Debtor shall provide evidence at the Stalking Horse Hearing to the extent necessary to prove that the Bid Protections are appropriate under the circumstances and should be approved by the Court. Any objections to the approval of any Stalking Horse Purchaser, Stalking Horse Agreement, and Bid Protections must be filed no later than April 20, 2018 (prevailing Central Time).

c. The Stalking Horse Purchaser approved at the Stalking Horse Hearing shall be deemed to be a Qualified Bidder and any Asset Purchase Agreement and the transaction contemplated thereby shall be deemed to be a Qualified Bid for all purposes.

v. **Qualified Bidder**: The Debtor shall make a determination regarding whether a bid is a Qualified Bid and shall notify bidders whether their bids have been determined to be Qualified Bids by no later than May 4, 2018 at 5:00 p.m. (prevailing Central Time). To the extent a Stalking Horse Purchaser is designated, the Stalking Horse Purchaser will be deemed a Qualified Bidder, and any Stalking Horse Agreement will constitute a Qualified Bid for all purposes. The Debtor stipulates, acknowledges and agrees that Berkadia shall be considered a Qualified Bidder for the Property and may credit bid its debt for such purpose consistent with section 363 of the Bankruptcy Code, subject to Debtor's right to seek to surcharge Berkadia's collateral.

vi. **Auction, Auction Procedures, and Overbids**: In the event that the Debtor receives one or more timely Qualified Bids with an acceptable purchase price, the Debtor shall conduct the Auction. The Auction, if required, will be conducted at the office of Debtor's counsel, 100 Congress Ave., Suite 1800 Austin, Texas. The Debtor has the sole right to adjourn or cancel the Auction at or prior to the Auction.

a. The Qualified Bidders shall appear in person at the Auction or through a duly authorized representative. Only representatives of the Debtor, holders of Qualified Bids, and advisors of Berkadia shall be entitled to be present at the Auction, and only the Qualified Bidders shall be entitled to make any subsequent bids at the Auction. Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale.

b. Bidding shall commence at the amount of the Stalking Horse Bid, of if there is no Stalking Horse Bid selected at the amount Debtor determines in its business judgment to be the highest and/or best Qualified Bid (the

"**Initial Highest Bid**"). Qualified Bidders may then submit successive bids higher than the previous bid, based on and increased from the Initial Highest Bid, in increments of $50,000. The Debtor reserves the right, in its discretion and subject to the exercise of its business judgment, to announce reductions or increases in minimum incremental bids at any time during the Auction. All Qualified Bidders shall have the right to submit additional bids and make additional modifications to their respective Modified Asset Purchase Agreements, as applicable, at the Auction to improve such bids. The Auction may include individual negotiations with the Qualified Bidders and/or open bidding in the presence of all other Qualified Bidders.

c. On or before May 9, 2018, the Debtor shall cause the results of the Auction, including a copy of the Successful Bid, the identity of any Successful Bidder (as defined in the Bid Procedures), and each Successful Bidder's proposed form of adequate assurance of future performance, to be filed on the docket of this case and available via PACER.

d. The Debtor shall request at the Sale Hearing that the Court authorize the Debtor to consummate the Sale Transaction with the Successful Bidder (as defined in the Bid Procedures). All Qualified Bidders at the Auction shall be deemed to have consented to the exclusive jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction.

vii. **Back-Up Bidder**: If an Auction is conducted, the Qualified Bidder with the next highest or otherwise best Qualified Bid for the Property at the Auction (the "**Back-Up Bid**") shall be required to serve as the back-up bidder (the "**Back- Up Bidder**") for the Property and keep such Back-Up Bid open and irrevocable until the consummation of the transaction with the Successful Bidder, or the Back-Up Bidder's receipt of notice from the Debtor of the release by the Debtor of the Back-Up Bidder's obligations. Following the Sale Hearing, if the Successful Bidder fails to consummate an approved Sale Transaction because of a breach or failure to perform on the part of such Successful Bidder or otherwise, the Back-Up Bidder will be deemed to be the new Successful Bidder, and the Debtor will be authorized, but not required, to consummate the sale with the Back-Up Bidder without further order of the Court.

viii. **Return of Good Faith Deposits**: Good Faith Deposits shall be returned without interest to each bidder not selected by the Debtor as the Successful Bidder or the Back-Up Bidder by no later than the tenth (10th) business day following the conclusion of the Auction. The Good Faith Deposit of the Back-Up Bidder shall be held by the Debtor until ten (10) business days after the closing of the Sale Transaction with the Successful Bidder or termination of the Back-Up Bid as provided above.

ix. **Alteration of Procedures**: The Debtor may make alterations to the Bid Procedures and/or terminate discussions with any and all prospective acquirers at any time and without specifying the reasons therefor, but only to the extent not materially inconsistent with the Bid Procedures, but including changes so as to modify deposit amounts and to modify or eliminate the requirements with respect to Back-Up Bidders.

x. **Auction Without Stalking Horse Bidder**. In the event there is no Stalking Horse Bidder, the Debtor shall determine which Qualified Bid shall constitute a Qualified Bid for purposes of the Sale Hearing.

### Assumption and Assignment Procedures

20. To facilitate the Sale Transaction, the Debtor proposes the following procedures for notifying counterparties to executory contracts and unexpired leases of potential cure amounts in the event the Debtor decides to assume and assign such contracts or leases:

i. **Notice of Assumption and Assignment**: Three (3) business days after the Auction, the Debtor shall file with the Court and serve via first class mail on all counterparties to any of the Debtor's executory contracts and unexpired leases (together, the "**365 Contracts**") and all parties who have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002 (collectively, the "**Contract Notice Parties**") a notice of assumption, assignment and sale.

ii. The Notice of Assumption and Assignment shall include the Successful Bidder's calculation of the amount necessary to cure all monetary defaults (the "**Cure Costs**") for each such 365 Contracts. The Debtor reserves the right to supplement the list of 365 Contracts and provide additional Notices of Assumption and Assignment for previously omitted 365 Contracts as appropriate, and to remove a 365 Contract from the list of Desired 365 Contracts at any time prior to five (5) calendar days before the commencement of the Sale Hearing.

iii. Although the Debtor has made a good faith effort to identify all 365 Contracts that may be susceptible to being assumed and assigned in connection with the Sale Transaction, they may discover additional 365 Contracts that the Debtor and the Successful Bidder(s) desire to assume and assign in connection therewith. Accordingly, if at any time after the entry of the Sale Order, the Debtor identifies additional prepetition executory contracts that may be subject to being assumed and assigned to the Successful Bidder, the Debtor shall serve a supplemental notice of assumption and assignment (a "**Supplemental Notice of Assumption and Assignment Notice**") by facsimile, electronic transmission, hand delivery or overnight mail on the counterparty (and its attorney, if known) to each

supplemental 365 Contract at the last known address available to the Debtor by no later than ten (10) days before the proposed effective date of the assignment. Each such Supplemental Notice of Assumption and Assignment shall set forth (i) the name and address of the 365 Contract counterparty, (ii) notice of the proposed effective date of the assignment (subject to the right of Successful Bidder(s) to withdraw such request for assumption and assignment of the 365 Contract prior to the Closing), (iii) identification of the 365 Contract, (iv) the Cure Costs, if any, to the extent such 365 Contract has been designated for assumption and assignment by a Successful Bidder, and (v) the proposed adequate assurance, as applicable.

iv.     Each Supplemental Notice of Assumption and Assignment that identifies a 365 Contract that was not previously identified as one that may be assumed, assigned and sold or that reduces the calculation of the Cure Costs (if the obligation to provide such information has occurred) shall provide a deadline of not less than seven (7) days from the date of service of such Notice of Assumption and Assignment by which the counterparty to any such added 365 Contract may object to (a) its listing as a 365 Contract and (b) the calculation of the Cure Costs for such 365 Contract. The inclusion of a 365 Contract on the Notice of Assumption and Assignment shall not obligate the Successful Bidder to take assignment of such 365 Contract. Only those 365 Contracts that constitute Desired 365 Contracts pursuant to any Successful Bidder's Modified Asset Purchase Agreement(s) will be assumed, assigned and sold to the Successful Bidder.

v.      **Objections to Assumption and Assignment**: Any counterparty to a 365 Contract shall file and serve on the Objection Recipients (as defined as the Debtor and the Successful Bidder any objections to (a) the proposed assumption, assignment and sale of the 365 Contracts (and must state in its objection, with specificity, the legal and factual basis thereof) and (b) if applicable, the proposed Cure Costs (and must state in its objection, with specificity, what Cure Costs are required with appropriate documentation in support thereof) no later than May 18, 2018 (the "**Assumption and Assignment Objection Deadline**").

vi.     If a counterparty to a 365 Contract files a timely objection asserting a higher cure than the maximum Cure Costs set forth in the Notice of Assignment and Assumption, and the parties are unable to consensually resolve the dispute prior to the hearing to resolve any such objection (May 31, 2018) (the "**Assumption/Assignment Hearing**"), the amount to be paid or reserved with respect to such objection will be determined at the Assumption/Assignment Hearing. All other objections to the proposed assumption and assignment of the Debtor's right, title, and interest in, to and under the 365 Contracts, if it is ultimately designated a 365 Contract that the Successful Bidder proposes be assumed, assigned, and sold to it in connection with the transaction (a "**Desired 365 Contract**"), will also be

heard at the Assumption/Assignment Hearing, unless the Desired 365 Contract has not been identified until after May 31, 2018, in which event any determination (including the resolution of any dispute with respect to Cure Costs) shall be determined within thirty (30) days after the Closing.

vii.     If no objection is timely filed and served, the counterparty to a 365 Contract shall be deemed to have consented to the assumption, assignment and sale of the 365 Contract to any Successful Bidder if such 365 Contract is designated by any Successful Bidder as a Desired 365 Contract and shall be forever barred from asserting any objection with regard to such assumption, assignment and sale, except with respect to the adequate assurance of future performance by any Successful Bidder. Any objections to any Successful Bidder's proposed form of adequate assurance of future performance must be raised at the Assumption/Assignment Hearing and will be resolved at the Assumption/Assignment Hearing. The Cure Costs provided to the contract counterparty shall be controlling, notwithstanding anything to the contrary in any 365 Contract, or any other document, and the counterparty to the 365 Contract shall be deemed to have consented to the Cure Costs and shall be forever barred from asserting any other claims related to such 365 Contract against the Debtor or the Successful Bidder(s), or the property of any of them.

## Sale Notice Procedures

21.     Within two (2) business days after entry of the Bid Procedures Order, the Debtor (or their agents) shall provide notice (substantially in the form of the Sale Notice attached to the Bid Procedures Order as **Exhibit 2**) of the Bid Procedures Order, the Motion, the Auction, the Objection Deadlines, and the Sale Hearing by first-class mail upon (i) the Office of the United States Trustee for the Western District of Texas; (ii) all entities known by the Debtor to have asserted any lien, claim, encumbrance, or other interest in the Property (for whom identifying information and addresses are available to the Debtor); (iii) all non-Debtor parties to the 365 Contracts (for whom identifying information and addresses are available to the Debtor), if any; (IV) any Governmental Authority known to have a claim in the bankruptcy cases; (ix) all parties who have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002; (x) all of the Debtor's known creditors; and (xi) all other Persons known to Debtor that have expressed an

interest in purchasing the Property and as directed by the Court (for whom identifying information and addresses are available to the Debtor) (collectively, the "**Sale Notice Parties**").

22.     The Debtor submits that the proposed Sale Notice and providing notice of this Motion, the Auction and the Sale Hearing as described herein, complies fully with Bankruptcy Rule 2002 and the Local Rules and constitutes good and adequate notice of the Sale Transaction and the proceedings with respect thereto. Therefore, the Debtor respectfully requests that this Court approve the form of the Sale Notice and the notice procedures proposed above.

23.     Any and all objections, if any, to any Sale Transaction, including objections to the Auction and the selection of any Successful Bidder must be filed by March 16, 2018 at 5:00 p.m. (prevailing Central Time) (the "**Sale Objection Deadline**")

24.     Any party failing to timely file an objection to the Sale Transaction shall be forever barred from objecting and shall be deemed to have consented to the Sale Transaction, including the transfer of the Debtor's right, title, and interest in, to and under the Property free and clear of any and all liens, claims, encumbrances, and other interests in accordance with a definitive agreement for a Sale Transaction.

## Legal Basis for Relief Requested

### A.     Approval of the Sale and Bid Procedures is Warranted Under Section 363 of the Bankruptcy Code

25.     Section 363 of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(l). Section 105 provides in relevant part that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

26.     A sale of a debtor's assets is authorized under section 363 of the Bankruptcy Code if there is a business justification for the sale. *Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines Inc. (In re Cont'l Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986); *see also Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (*citing Fulton State Bank v. Schipper (In re Schipper))*, 933 F.2d 513, 515 (7th Cir. 1991)); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986). Among the factors in determining whether there is sufficient business justification for the sale, the bankruptcy court:

> should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike. He might, for example, look to such relevant factors as the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis–a–vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value. This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge.

*In re Cont'l Air Lines, Inc.*, 780 F.2d at 1226 (*quoting Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.))*, 722 F.2d 1063, 1071 (2d Cir. 1983)). "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litig. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). When a valid business justification exists, the law vests the debtor's decision to use property out of the ordinary course of business with a strong presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interest of the company." *In re Integrated Res.*, 147 B.R. at 656 (quoting *Smith v. Van Gorkom*, 488 A. 2d 858, 872 (Del. 1985)).

Therefore, parties objecting to the Debtor' proposed sale must make a showing of "bad faith, self-interest, or gross negligence." *Integrated Res.*, 147 B.R. at 656.

27.     Moreover, the Bankruptcy Court has authority under section 105(a) of the Bankruptcy Code to approve non-ordinary course transactions under section 363(b) of the Bankruptcy Code. The Fifth Circuit has acknowledged that section 105 confers broad powers on bankruptcy courts:

> [Section] 105 [is] an omnibus provision phrased in such general terms as to be the basis for a broad exercise of power in the administration of a bankruptcy case. The basic purpose of § 105 is to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction
> …

*See Davis v. Davis (In re Davis)*, 170 F.3d 475, 492 (5th Cir 1999) (citation omitted).

28.     The Debtor has proposed the sale of the Property after thorough consideration of all viable alternatives, and has concluded that the Sale is supported by a number of sound business reasons. Without the Sale, the Debtor does not see any possibility that they could sufficiently raise capital and engage in the necessary preparations and development that would be necessarily to utilize the Property profitably. Given the current status of the Property, and the need to put the Property in the hands of an entity that can utilize it and protect the public from danger, a sale of the Property is in the best interest of the Estate, its creditors and the public in general.

29.     Based on the foregoing, the sale of the Property is justified by sound business reasons and is in the best interests of the Debtor. Accordingly, pursuant to section 363(b) of the Bankruptcy Code, the Debtor requests approval of the sale to the Buyer as set forth herein.

**B.     The Sale of the Assets Free and Clear of Liens, Claims, and Interests is Authorized Under Section 363(f) of the Bankruptcy Code**

30.     The Debtor also requests that the Court authorize the Sale of the Property free and clear of any and all liens, claims, charges, encumbrances and interests (collectively, the

"**Interests**"), which may be asserted or otherwise exist, with any such Interests to attach to the proceeds of the Sale of the Property, subject to the rights and defenses of the Debtor, if any, with respect thereto. Notwithstanding the foregoing, the Debtor requests by this Motion that the net sales proceeds shall be remitted to Berkadia, expect to the extent necessary to assert surcharge rights as described above.

31. Section 363 of the Bankruptcy Code provides that a debtor may sell property of the estate free and clear of any other entity's interest in such property if:

    (1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;

    (2)    such entity consents;

    (3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such Assets;

    (4)    such interest is in a bona fide dispute; or

    (5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

32. While the term "any interest," as used in section 363(f), is not defined in the Bankruptcy Code, courts have held that the scope of section 363(f) of the Bankruptcy Code is not limited to *in rem* interests. *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 581-82 (4th Cir. 1996); *Folger Adam Sec. v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 258 (3d Cir. 2000) (citing 3 COLLIER ON BANKRUPTCY 363.06[1]). Thus, a debtor can "sell its assets under § 363(f) free and clear of successor liability that otherwise would have arisen under federal statute." *Folger Adam*, 209 F.3d at 258.

33. Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the sale of the Property free and clear of

all Interests. *See Citicom Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988).

34.    The Debtor believes that a sale satisfies at least one of the five conditions in section 363(f) of the Bankruptcy Code.  In particular, the proposed Sale Order will provide for all Interests to attach to the proceeds from the Sale of the Property in the order of their priority and with the same validity, priority, force and effect which such Interests now have against the Property, subject to the rights, claims, defenses, and other objections, if any, of the Debtor and parties in interest with respect to such Interests.  Notwithstanding the foregoing, the Debtor requests by this Motion that the net sales proceeds shall be remitted to Berkadia at the Closing subject to surcharge rights necessary for payment of a breakup fee to any Stalking Horse Bidder and other expenses of sale of the Debtor.  The Debtor accordingly requests authority to convey the Property pursuant to the requested Sale Procedures, free and clear of all such Interests.

35.    The Debtor has shown that a valid business justification exists to sell the Property Given Debtor's inability to continue to fund the construction of the Project, the issues that exist with the Property due to the termination of the Construction Contract, the lack of response from Berkadia and HUD in connection with the disposition of the Property, and specifically the lack of any activity to foreclosure or protect the Property, and the continued costs of protecting the public from the dangerous conditions on the Property, Debtor believes that a sale as proposed herein in the most logical and effective manner of liquidating the Property.

36.    Moreover, as stated herein, the Debtor will provide notice of the sale of the Property to parties in interest. The Debtor believes that the proposed notice procedures are reasonable and adequate under the circumstances.

37. At the Sale Hearing, the Debtor will provide evidence that the sale price for the Property is fair and reasonable by showing that the Successful Bidder offered the highest or best purchase offer for the Property. Moreover, the Bid Procedures are designed to encourage as many bidders as possible to put forth their best offers, thus increasing the likelihood that the Property will be sold for the highest or best purchase price possible.

38. Finally, the Debtor will present evidence at the Sale Hearing that the Asset Purchase Agreement was a fairly negotiated, arm's length transaction in which the Successful Bidder acted in good faith, and, therefore, that the protections of section 363(m) of the Bankruptcy Code should apply.

39. Accordingly, the Debtor requests that the Court approve the proposed Sale Transaction set forth herein.

C.  **The Court Should Approve the Procedure for Assumption and Assignment of Contracts Under Section 365 of the Bankruptcy Code**

40. While Debtor believes that there are no executory contracts or unexpired leases that are likely to be assumed in connection with the approval of the Sale Procedures, the Debtor also requests approval of a procedure with respect to the assumption and assignment of contracts to the buyer as necessary to effectuate the transfer of the Property.

41. Section 365 of the Bankruptcy Code permits a debtor to assign an executory contract or unexpired lease if "(A)   the [debtor] assumes such contract or lease in accordance with the provisions of this section; and (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease." 11 U.S.C. § 365(f)(2). Section 365(a) of the Bankruptcy Code authorizes a debtor to assume an executory contract or unexpired lease, and section 365(b)(1), in turn, codifies the requirements for such assumption, providing that:

(b)(l) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –

> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default . . . ;

> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1). The meaning of "adequate assurance of future performance" for the purpose of the assumption of executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See In re Texas Health Enters., Inc.*, 246 B.R. 832, 834 (Bankr. E.D. Tex. 2000); *Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989); *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985).

42. It is well established that the decision to assume or reject an executory contract or unexpired lease is a matter within the "business judgment" of the debtor. *See In re Pilgrim's Pride Corp.*, 403 B.R. 413, 422-26 (Bankr. N.D. Tex. 2009); *Richmond Leasing Co. v. Capital Bank, N.A. (In re Richmond Leasing Co.)*, 762 F.2d 1303, 1309 (5th Cir. 1985); *Delightful Music Ltd. v. Taylor (In re Taylor)*, 913 F.2d 102, 107 (3d Cir. 1990). Accordingly, assumption or rejection of any executory contract is appropriate where the assumption or rejection would benefit the estate.

43. The assumption and assignment of any contracts necessary to the transfer of the Property satisfies the requirements of section 365 of the Bankruptcy Code. First, to the extent that

there is any default under any of the assumed contracts, the procedures set forth herein specify

that any such defaults will be cured as part of the transaction. Second, any buyer will be required

to demonstrate sufficient ability to continue performance under each of the assumed contracts. To

the extent necessary (or requested by any party in interest), the Buyer or any other Successful

Bidder will demonstrate that adequate assurance of future performance is present.

**D.     Granting the Debtor Authority to Enter into a Stalking Horse Agreement is Appropriate**

44.     In general, bid protections encourage a potential purchaser to invest the requisite

time, money and effort to negotiate with a debtor and perform the necessary due diligence

attendant to the acquisition of a Debtor's assets, despite the inherent risks and uncertainties of the

chapter 11 process. Typically, bidding incentives are judged under a business judgment standard,

which proscribes judicial second-guessing of the actions of Debtor taken in good faith and in the

exercise of honest judgment. *See e.g.*, *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr.

S.D.N.Y. 1989) (holding that bidding incentives may "be legitimately necessary to convince a

white knight to enter the bidding by providing some form of compensation for the risks it is

undertaking" (internal quotation marks and citation omitted Courts typically approve Bid

Protections in chapter 11 bankruptcy sales. *See, e.g., In re Lincolnshire Campus, LLC*, 2010 WL

5269706, at *1 (Bankr. N.D. Tex. July 23, 2010) (approving breakup fee and expense

reimbursement under section 503(b) of the Bankruptcy Code in the context of a sale of

substantially all of the debtor's assets under section 363 of the Bankruptcy Code); *In re Texas

Rangers Baseball Partners*, 431 B.R. at 715 (same); *In re APP Plus*, 223 B.R. 870, 875 (Bankr.

E.D.N.Y. 1998) (approving break-up fee in connection with sale of substantially all of the

Debtor's assets pursuant to 11 U.S.C. § 363(b)); *In re Kmart*, Case No. 02-B-02474 (Bankr. N.D.

Ill. May 10, 2002) (authorizing a termination fee and overbid amounts for potential bidders).

45.     In the event that the Debtor enters into a Stalking Horse Agreement, the Debtor will present evidence at the Stalking Horse Hearing that any and all proposed Bid Protections provide benefit to the Debtor's estate.  Without the assurance of such Bid Protections, it is unlikely that any Potential Bidder will enter into a Stalking Horse Agreement because the Potential Bidder must perform due diligence on the value of the Property, and must similarly invest time and money in crafting an offer.  The Bid Protections thus incentivize Potential Bidders to enter into Stalking Horse Agreement with the Debtor. In this manner, offering Bid Protections will facilitate competition in the Bidding Process, increasing the likelihood that the Debtor receives the highest or best price possible for the Property.

46.     In addition to increasing the likelihood of competitive bidding, a Stalking Horse Purchaser would establish a floor for other bids, precluding the possibility that the Debtor could receive less than is contemplated for the Property  Offering Bidding Protections will encourage any Stalking Horse Purchaser to invest its resources in valuing the Property, making it more likely that the Debtor receives the true value for the Property.

47.     In addition to the foregoing, the Debtor will only enter into a Stalking Horse Agreement to the extent that it will result in the highest or best possible sale price or best possible offer for the Property.  Accordingly, the Debtor requests authorization to offer Bid Protections to any and all Stalking Horse Purchasers, subject to further court approval.

## E.     Relief from Bankruptcy Rules 6004(h) and 6006(d) is Appropriate

48.     Under Bankruptcy Rule 6004(h), unless the court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for fourteen days after entry of the order. Fed. R. Bankr. P. 6004(h).  The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before the order is implemented.  *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).  Similarly,

Bankruptcy Rule 6006(d) stays all orders authorizing a debtor to assign an executory contract or unexpired lease pursuant to section 365(f) of the Bankruptcy Code for fourteen days, unless the court orders otherwise.

49. To preserve the value of the Debtor's estate and limit the costs of administering and preserving the Property, it is critical that the Debtor close the sale of the Property as soon as possible after all closing conditions have been met or waived. Accordingly, the Debtor hereby request that the Court waive the fourteen-day stay periods under Bankruptcy Rules 6004(h) and 6006(d).

## No Previous Request

50. No previous request for the relief sought herein has been made by the Debtor to this or any other court.

**WHEREFORE** the Debtor respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Respectfully submitted,

WALLER LANSDEN DORTCH & DAVIS, LLP

By: _/s/ Eric J. Taube_
    Eric J. Taube
    State Bar No. 19679350
    Eric.taube@wallerlaw.com
    Mark C. Taylor
    State Bar No. 19713225
    Mark.taylor@wallerlaw.com
    100 Congress Ave., Suite 1800
    Austin, Texas 78701
    Telephone: (512) 685-6400
    Telecopier: (512) 685-6417

ATTORNEYS FOR DEBTOR AND DEBTOR IN POSSESSION

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing document has been electronically on all parties receiving the Court's ECF notices on this 1st day of March, 2018, and upon the parties listed on the attached Full Service List by depositing same in the United States First Class Mail on March 2, 2018.

_/s/ Eric J. Taube_
Eric J. Taube

# FULL SERVICE LIST

**Chapter 7 Trustee**
John Patrick Lowe
281 North Getty St.
Uvalde, TX 78801

**U.S. Trustee**
United States Trustee - AU12
903 San Jacinto, Ste. 230
Austin, TX 78701

**All Creditors**
ACC (Travis)
551 Airport Blvd.
Austin, TX 78751

AT&T Services, Inc.
530 McCullough
San Antonio, TX 78753

Berkadia Commercial Mortgage LLC
12444 Powerscourt Drive
Suite 400
St. Louis, MO 63131

BWise Environmental Consulting, Inc.
1225 County Rd. 154
Georgetown, TX 78626

City of Austin
P.O. Box 1088
Austin, TX 78767-1088

City of Austin Utilities
P.O. Box 2267
Austin, TX 78783

ICI Construction
5057 Keller Springs Rd.
#200
Addison, TX 75001

Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19114

Mobile Mini
4646 East Van Buren Street
Suite 400
Phoeniz, AZ 85008

National Construction Rentals, Inc.
116 Nell Deane Blvd.
Schertz, TX 78154

Pac-Van Inc.
9155 Harrison Park Court
Indianapolis, IN 46216

Pflugerville ISD
P.O. Box 149326
Austin, TX 78714-9328

Smith Protective Services
2007 Kramer Lane
Suite 100
Austin, TX 78758

Time Warner Cable Enterprises LLC
12012 N. MoPac Expwy
Austin, TX 78758

Travis Central Health
551 Airport Blvd.
Austin, TX 78751

Travis County, Texas
P.O. Box 149328
Austin, TX 78714-9328

United Site Services
118 Flanders Rd.
Suite 1000
Westborough, MA 01581-

Williams Scotsman
2290 N. IH 35
Georgetown, TX 78626

**Parties Requesting Service**
Ray Battaglia
Law Offices of Ray Battaglia, PLLC
66 Granburg Circle
San Antonio, TX 78218

T. Josh Judd
Andrews Myers P.C.
1885 Saint James Place, 15th Floor
Houston, TX 77056

B. Weldon Ponder, Jr.
4408 Spicewood Springs Road
Austin, Texas 78759

Kay D. Brock
Assistant County Attorney
P.O. Box 1748
Austin, TX 78767

Joshua W. Wolfshohl
Amy T. Geise
Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, Texas 77002

# EXHIBIT A

**Bid Procedures Order**

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **IO at TECH RIDGE, LP** | § | **CASE NO. 17-11540-tmd** |
| *Debtor* | § | **(Chapter 11)** |
| | § | |
| | § | |

**ORDER APPROVING (A) BID PROCEDURES, INCLUDING PROCEDURES FOR
SELECTION OF STALKING HORSE PURCHASERS, (B) PROCEDURES FOR
ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
AND UNEXPIRED LEASES AND RELATED NOTICES, (C) NOTICE OF AUCTION,
STALKING HORSE HEARING AND SALE HEARING,
AND (D) RELATED RELIEF**

Upon the Motion, dated _____, 2018 (the "***Motion***")[1] of IO at Tech Ridge, LP,

as debtor and debtor in possession ("***Debtor***") for an order pursuant to sections 105, 363, and 365

of title 11 of the United States Code (the "***Bankruptcy Code***"), Rules 2002, 6004, and 6006 of the

Federal Rules of Bankruptcy Practice and Procedure (the "***Bankruptcy Rules***"), (i) approving the

bid procedures (the "***Bid Procedures***," attached hereto as **Exhibit 1**) for the sale of real estate and

related assets located at 12600 McCallen Pass, Austin, Texas (the "Property"), including the

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

procedures for selecting a Stalking Horse Purchaser, (ii) approving the procedures for the assumption, assignment, and sale of executory contracts and unexpired leases, including notice of proposed cure costs (the "*Assumption and Assignment Procedures*"), (iii) establishing a date for an auction (the "*Auction*") if the Debtor receives one or more timely and acceptable Qualified Bids, a hearing to approve the Debtor's selection of a Stalking Horse Purchaser, if any, and the provision of bid protections to such Stalking Horse Purchaser (the "*Bid Protections*"), if any, (the "*Stalking Horse Hearing*"), and a final hearing (the "*Sale Hearing*") to approve the sale of the Property (the "*Sale Transaction*"), (iv) approving the form and manner of notice of the Auction, Stalking Horse Hearing, Sale Hearing, and the Assumption and Assignment Procedures, and (v) granting related relief, and the Court having determined that notice of the Motion was adequate and sufficient; and all parties having been afforded due process and an opportunity to be heard with respect to the Motion and all the relief requested therein; and the Court having reviewed and considered: (i) the Motion; (ii) the objections and responsive pleadings filed in connection with the Motion, if any; and (iii) the representations of counsel made, and the evidence proffered, at the hearing to approve the Motion (the "*Bid Procedures Hearing*"); and the Bid Procedures Hearing having been held, and after due deliberation and sufficient cause appearing therefor, hereby finds and determines that:

A.     This Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b), and venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     The statutory predicates for relief sought in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006.

C.     The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  The entry of this Order is in the best interests of the Debtor, its estate and creditors, and other parties in interest.

D.     The notice of the Motion, the Bid Procedures Hearing, and the proposed entry of this Order was adequate and sufficient under the circumstances of this chapter 11 case, and such notice complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Accordingly, no further notice of the Motion, the Bid Procedures Hearing, or this Order is necessary or required.

E.     All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the Bid Procedures Hearing or by stipulation filed with the Court are overruled except as otherwise set forth herein.

F.     The Debtor has articulated good and sufficient reasons for the Court to (i) approve the Bid Procedures for the sale of the Property, including the procedures for selecting a Stalking Horse Purchaser, (ii) approve the Assumption and Assignment Procedures, (iii) establish a date for the Auction, the Stalking Horse Hearing, and the Sale Hearing, (iv) approve the form and manner of notice of the Auction, Stalking Horse  Hearing, Sale Hearing, and the Assumption and Assignment Procedures, and (v) grant related relief. Such good and sufficient reasons were set forth in the Motion and on the record at the Bid Procedures Hearing, are incorporated by reference herein and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

G.     The proposed *Notice of Auction, Stalking Horse Hearing and Sale Hearing* (the "***Sale Notice***,") substantially in the form attached hereto as **Exhibit 2**, and the proposed *Notice of Assumption and Assignment* to be served on the Contract Notice Parties (as defined herein) (the

"*Notice of Assumption and Assignment*,") substantially in the form attached hereto as **Exhibit 3**, are each calculated to provide adequate notice concerning the proposed sale of the Assets and the proposed assumption, assignment, and sale of the Debtor's executory contracts and unexpired leases (the "*365 Contracts*"), and will provide due and adequate notice of the relief sought in the Motion.

H.     The Debtor has demonstrated that the Bid Procedures are fair, reasonable, and appropriate and are designed to maximize the value of the Debtor's estate.

I.      The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are adopted as such. To the extent any conclusions of law are findings of fact, they are adopted as such.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.     The Motion is **GRANTED** to the extent set forth herein.

2.     All Objections to the relief requested in the Motion, if any, that have not been withdrawn, waived, or settled as announced to the Court at the Bid Procedures Hearing are denied and overruled in their entirety on the merits, with prejudice.

3.     The Bid Procedures are hereby approved in their entirety in the form attached hereto as **Exhibit 1**. All actions of the Debtor as authorized herein may be taken by any officer or director of the Debtor. Notwithstanding the foregoing, the consummation of the Sale Transaction shall remain subject to the entry of the Sale Order.

4.     The Debtor may proceed with the Sale Transaction in accordance with the Bid Procedures and is authorized to take any and all actions necessary or appropriate to implement the Bid Procedures.

5.     The process for submitting Qualified Bids (as defined in the Bid Procedures) is fair, reasonable and appropriate and is designed to maximize recoveries for the benefit of the Debtor's estate, its creditors and other parties in interest. Any disputes as to the selection of a Qualified Bid, Initial Highest Bid and/or Successful Bid (all as defined in the Bid Procedures) shall be resolved by this Court.

6.     The Debtor is authorized to conduct the Auction in the event they receive one or more timely and acceptable Qualified Bids. The Auction is necessary to ensure that the Debtor receives the highest or best purchase offer for the Property, thus maximizing value to the Debtor's estate and resulting distributions to its creditors.

7.     Subject to further Court approval, the Debtor is authorized to enter into a Stalking Horse Agreement and to provide Bid Protections to such Stalking Horse Purchaser, including any potential break-up fee agreed to by the Debtor and any Stalking Horse Purchaser. Any and all Potential Bidders interested in becoming a Stalking Horse Purchaser must submit a Qualified Bid by _____, 2018 at 5:00 p.m. (prevailing Central Time).

8.     The Debtor must designate all Stalking Horse Purchasers by _____, 2018 at 5:00 p.m. (prevailing Central Time). In the event that the Debtor designates a Stalking Horse Purchaser, the Court shall conduct a hearing on _____, 2018 at _____:00 __.m. (prevailing Central Time) (the "***Stalking Horse Hearing***") to consider the approval of any such Stalking Horse Purchaser, Stalking Horse Agreement, and accompanying Bid Protections, if any, on an expedited basis. Any and all

objections to any Stalking Horse Purchaser, Stalking Horse Agreement, or related Bid Protections must be filed by _____, 2018 at 5:00 p.m. (prevailing Central Time).

9. Upon the selection of a Stalking Horse Purchaser, the Debtor shall file and serve a notice on the Notice Parties (as defined in the Motion) that includes: (i) the identity of the proposed Stalking Horse Purchaser selected, (ii) a summary of the key terms of the Stalking Horse Agreement, (iii) a summary of the type and amount of Bid Protections, if any, being offered the proposed Stalking Horse Purchaser, (iv) a summary of any necessary modifications or amendments to the Bid Procedures, and (v) a copy of each Stalking Horse Agreement.

10. The form of Sale Notice attached hereto as **Exhibit 2** is hereby approved.

11. Within three (3) business days after the Court enters this Order, the Debtor (or their agents) shall serve the Sale Notice by first class United States mail on (i) the Office of the United States Trustee for the Western District of Texas; (ii) all entities known by the Debtor to have asserted any lien, claim, encumbrance, or other interest in the Property (for whom identifying information and addresses are available to the Debtor); (iii) all non-Debtor parties to the 365 Contracts (for whom identifying information and addresses are available to the Debtor); (iv) any Governmental Authority known to have a claim in the bankruptcy cases; (v) all parties who have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002; (vi) all of the Debtor's known creditors; and (vii) all other Persons as directed by the Court (for whom identifying information and addresses are available to the Debtor) (collectively, the "*Sale Notice Parties*").

12. Service of the Sale Notice as approved and set forth herein shall be deemed proper, due, timely, good, and sufficient notice of, among other things, the entry of this Order, the Bid Procedures, the Auction, the Stalking Horse Hearing, the Sale Hearing, the Objection Deadlines,

and the proposed Sale Transaction, including the transfer of the Debtor's right, title and interest in, to and under the Debtor's assets free and clear of any and all liens, claims, encumbrances, and other interests, and no other or further notice is necessary.

13.     The form of Notice of Assumption and Assignment attached hereto as **Exhibit 3** is approved. In combination with the Sale Notice, the Notice of Assumption and Assignment (i) contains the type of information required under Bankruptcy Rule 2002 that is currently known to the Debtor and (ii) is reasonably calculated to provide due, adequate and timely notice to all counterparties of (a) the assumption and assignment of the 365 Contracts and rights thereunder, (b) once designated by a Qualified Bidder as a contract that such bidder desires to assume, the maximum amount and manner offered to satisfy the Cure Costs, and (c) the deadline to file objections to such assumption and assignment, applicable cure costs (if designated by a Qualified Bidder as a contract that they wish to assume), the existence of any defaults, and/or adequate assurance of future performance.

14.     Three business days after the Auction, the Debtor shall file with the Court and serve via first class mail on all counterparties to any of the Debtor's executory contracts and unexpired leases (together, the "*365 Contracts*") and all parties who have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002 (collectively, the "*Contract Notice Parties*") a notice of assumption, assignment and sale substantially in the form of the Notice of Assumption and Assignment attached to this Order as **Exhibit 3** if any executory contract or unexpired leases are being accrued.

15.     If at any time after the entry of the Sale Order, the Debtor identifies additional prepetition executory contracts or unexpired leases to be assumed and assigned to the Successful Bidder(s), the Debtor shall serve a supplemental notice of assumption and assignment (the

"**Supplemental Assumption and Assignment Notice**") by facsimile, electronic transmission, hand delivery or overnight mail on the counterparty (and its attorney, if known) to each supplemental 365 Contract at the last known address available to the Debtor by no later than ten days before the proposed effective date of the assignment.

16.    Any counterparty to a 365 Contract shall file and serve on the Objection Recipients (as defined below) any objections to (a) the proposed assumption, assignment and sale of the 365 Contracts (and must state in its objection, with specificity, the legal and factual basis thereof) and (b) if applicable, the proposed Cure Costs (and must state in its objection, with specificity, what Cure Costs are required with appropriate documentation in support thereof) no later than _____, 2018 (the "**Assumption and Assignment Objection Deadline**" and, together with the Sale Objection Deadline (as defined herein), the "**Objection Deadlines**"). The "**Objection Recipients**") are (i) the Office of the United States Trustee for the Western District of Texas, (ii) counsel to the Debtor, Waller Lansden Dortch & Davis, LLP, Eric J. Taube, 100 Congress Avenue, 18th Floor, Austin, Texas 78701, eric.taube@wallerlaw.com; and (iii) if Applicable, any Stalking Horse Purchaser selected by the Debtor.

17.    If a counterparty to a 365 Contract files a timely objection asserting a higher cure than the maximum Cure Costs set forth in the notice set forth herein, and the parties are unable to consensually resolve the dispute prior to the hearing to resolve any such objection (on or about _____, 2018) (the "**Assumption/Assignment Hearing**"), the amount to be paid or reserved with respect to such objection will be determined at the Assumption/Assignment Hearing. All other objections to the proposed assumption and assignment of the Debtor's right, title, and interest in, to and under the 365 Contracts, if it is ultimately designated a 365 Contract that the Successful Bidder proposes be assumed, assigned, and sold to it in connection with the

transaction (a "***Desired 365 Contract***"), will also be heard at the Assumption/Assignment Hearing, unless the Desired 365 Contract has not been identified until after _____, 2018, in which event any determination (including the resolution of any dispute with respect to Cure Costs) shall be determined within thirty (30) days after the Closing.

18.     If no objection is timely filed and served, the counterparty to a 365 Contract shall be deemed to have consented to the assumption, assignment and sale of the 365 Contract to the Successful Bidder(s) if such 365 Contract is designated by the Successful Bidder(s) as a Desired 365 Contract and shall be forever barred from asserting any objection with regard to such assumption, assignment and sale, except with respect to the adequate assurance of future performance by the Successful Bidder(s). Any objections to any Successful Bidder's proposed form of adequate assurance of future performance must be raised at the Assumption/Assignment Hearing and shall be resolved at the Assumption/Assignment Hearing. The Cure Costs set forth in the Notice of Assumption and Assignment shall be controlling, notwithstanding anything to the contrary in any 365 Contract, or any other document, and the counterparty to the 365 Contract shall be deemed to have consented to the Cure Costs and shall be forever barred from asserting any other claims related to such 365 Contract against the Debtor or the Successful Bidder, or the property of any of them.

19.     Any and all objections, if any, to any Sale Transaction, including objections to the Auction and the selection of any Successful Bidder(s), must be filed by _____, 2018 at 5:00 p.m. (prevailing Central Time) (the "***Sale Objection Deadline***") and be served on the Objection Recipients.

20.     Any party failing to timely file an objection to any Sale Transaction shall be forever barred from objecting and shall be deemed to have consented to any Sale Transaction,

including the transfer of the Debtor's right, title, and interest in, to the Property free and clear of any and all liens, claims, encumbrances, and other interests in accordance with a definitive agreement for a Sale Transaction.

21.     Any party desiring to submit a bid for the Debtor's right, title and interest in, to and the Property must comply with the Bid Procedures. Only representatives of the Debtor and holders of Qualified Bids shall be entitled to be present at the Auction.

22.     To the extent that one or more timely and acceptable Qualified Bids are received, the Debtor shall conduct an auction on _____, 2018 at _____ ___.m. (prevailing Central Time) at the offices of Debtor's counsel, 100 Congress Avenue, Suite 1800, Austin, Texas 78701. The Debtor has the sole right to adjourn or cancel the Auction at or prior to the Auction.

23.     The Debtor may, make alterations to these Bid Procedures and/or terminate discussions with any and all prospective acquirers at any time and without specifying the reasons therefor, but only to the extent not materially inconsistent with the Bid Procedures, but including changes so as to modify deposit amounts and to modify or eliminate the requirements with respect to Back-Up Bidders.

24.     The Sale Hearing shall be held on _____, 2018 at _____ _.m. (prevailing Central Time).

25.     Notwithstanding Bankruptcy Rules 6004, 6006 or otherwise, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. To the extent applicable, the stays described in Bankruptcy Rules 6004(h) and 6006(d) are hereby waived.

26.     The terms of this Order shall control to the extent of any conflict with the Motion.

27.     The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

###

**Exhibit 1**

**Bid Procedures**

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **IO at TECH RIDGE, LP** | § | **CASE NO. 17-11540-tmd** |
| *Debtor* | § | **(Chapter 11)** |
| | § | |

## BID PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OR A PORTION OF THE DEBTOR'S ASSETS

IO at Tech Ridge, LP, as debtor and debtor in possession ("***Debtor***"), set forth the following bid procedures (the "***Bid Procedures***") to be employed in connection with an auction, if the Debtor receives one or more timely Qualified Bids (the "***Auction***"), for the sale of the real estate and related assets owned by the Debtor and located at 12600 McCallen Pass, Austin, Texas (the "Property"). At a hearing following the Auction (the "***Sale Hearing***"), the Debtor will seek the entry of an order (the "***Sale Order***") from the United States Bankruptcy Court for the Western District of Texas, Austin Division (the "***Court***") authorizing and approving the Property among the Debtor and the Qualified Bidder (as defined herein) that the Debtor determines to have made the highest or otherwise best bid (a "***Successful Bidder***"). These Bid Procedures have been approved and authorized pursuant to the *Order Approving (A) Bid Procedures, Including Procedures for Selection of Stalking Horse Purchaser, (B) Procedures for Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Related Notices, (C) Notice of Auction, Stalking Horse Hearing, and Sale Hearing, and (D) Related Relief* (the "***Bid Procedures Order***") entered by the Court on _____, 2018.

### A.    Approvals

The proposed sale(s) shall in all respects be subject to approval by the Court and in compliance with: (i) the applicable provisions of chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***"); (ii) the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"); and (iii) other applicable rules and law, including, without limitation, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Northern District of Texas (the "***Local Rules***") and Orders of the Bankruptcy Court.

### B.    Assets to Be Sold

The Auction shall consist of all of the Property[1] and all improvements made to the Property and all materials located at the Property owned by Debtor.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bid Procedures Order

## C.    Preliminary Diligence

Upon execution of a valid confidentiality agreement, in form and substance satisfactory to the Debtor, any prospective bidder (each, a "*Potential Bidder*") identified by the Debtor as reasonably likely to be a Qualified Bidder (as defined herein) that wishes to conduct due diligence on the Property may be granted access to the Property.

If a Stalking Horse Purchaser is designated, any other Potential Bidder must complete its due diligence by the Bid Deadline. If a Stalking Horse Purchaser is not designated, any bidder(s) determined by the Debtor to have made the highest or otherwise best bid ("*Successful Bidder*") must complete its due diligence prior to the Sale Hearing. There shall be no other provision for the completion of due diligence after the Bid Deadline.

## D.    Bid Deadline

Any person or entity interested in participating in the Auction must submit a Qualified Bid (as defined herein) on or before _____, 2018 at 5:00 p.m. (prevailing Central Time) (the "*Bid Deadline*") in writing, to (i) the attorneys for the Debtor, Waller Lansden Dortch & Davis LLP, Attn: Eric J. Taube and Mark Taylor, 100 Congress Avenue, 18th Floor, Austin, Texas 78701, eric.taube@wallerlaw.com and mark.taylor@wallerlaw.com. The Debtor may, with the consent of any designated Stalking Horse Purchaser, if any, extend the Bid Deadline, but shall promptly notify the Stalking Horse Purchaser and all Potential Bidders of any such extension.

## E.    Potential Stalking Horse Bid

The Debtor will entertain, the possibility of entering into a Stalking Horse Agreement with a Qualified Bidder. Any and all Potential Bidders interested in becoming a Stalking Horse Purchaser must submit a Qualified Bid by _____, 2018 at 5:00 p.m. (prevailing Central Time). Any and all Stalking Horse Purchasers must be so designated by the Debtor by _____, 2018 at 5:00 p.m. (prevailing Central Time).

If the Debtor enters into an agreement with a Stalking Horse Purchaser, the Debtor will file and serve notice of the proposed Stalking Horse Agreement on the Notice Parties (as defined in the Bid Procedures Order). The notice will include (i) the identity of each proposed Stalking Horse Purchaser selected, (ii) a summary of the key terms of each Stalking Horse Agreement, (iii) a summary of the type and amount of Bid Protections, if any, being offered to each proposed Stalking Horse Purchaser, (iv) a summary of any necessary modifications or amendments to the Bid Procedures, and (v) a copy of each Stalking Horse Agreement. The Debtor will request that the Court set a hearing on _____, 2018 at _____ _.m. (prevailing Central Time) to approve the Stalking Horse Purchaser and Stalking Horse Agreement on an expedited basis.

In certain circumstances, the Debtor may determine that it is appropriate to provide the Stalking Horse Purchaser with Bid Protections, including a break-up fee or expense reimbursement. All Bid Protections will be negotiated at arm's length with Potential Bidders and with the intent of maximizing the value to be received by the Debtor's estate, and the Debtor shall provide evidence at the Stalking Horse Hearing to the extent necessary to prove that the Bid Protections are appropriate under the circumstances and should be approved by the Court. Any

objections to the approval of any Stalking Horse Purchaser, Stalking Horse Agreement, and Bid Protections must be filed no later than _____, 2018 at 5:00 p.m. (prevailing Central Time).

The Stalking Horse Purchaser approved at the Stalking Horse Hearing shall be deemed to be Qualified Bidders, and any Modified Asset Purchase Agreements (as defined herein) and the transactions contemplated thereby shall be deemed to be Qualified Bids for all purposes.

**F.**    **Qualified Bids**

To participate in the bidding process and be deemed a "***Qualified Bidder***," each Potential Bidder must submit a "***Qualified Bid***" by the Bid Deadline. To constitute a Qualified Bid, a bid must:

   (a)    be in writing;

   (b)    identify the Property;

   (c)    include a proposed list of the Debtor's 365 Contracts that the Potential Bidder proposes be assumed, assigned, and sold to it in connection with the transaction, if any, (the "***Desired 365 Contracts***") and proposed adequate assurance of future performance;

   (d)    fully disclose the legal identity of each entity that will be bidding for the Property or otherwise participating in connection with such bid, and the complete terms of any such participation;

   (e)    fully disclose any connections or agreements with the Debtor, any other known Potential Bidder or Qualified Bidder, and/or any officer or director of the Debtor;

   (f)    provide an irrevocable offer in the form of an executed copy of an Asset Purchase Agreement (with any modifications, the "Modified Asset Purchase Agreement"), including all exhibits and schedules contemplated thereby (other than exhibits and schedules that by their nature must be prepared by the Debtor);

   (g)    include a marked copy of the Modified Asset Purchase Agreement reflecting the differences between the Modified Asset Purchase Agreement and the Asset Purchase Agreement;

   (h)    for any bid that requires the assumption and assignment of executory contracts or unexpired leases, identify which executory contracts and/or unexpired leases are to be assumed and assigned and provide evidence establishing its ability to provide adequate assurance of future performance of such executory contracts or unexpired leases;

(i)        state that such bidder is financially capable of consummating the transactions contemplated by the Modified Asset Purchase Agreement and detail the source(s) of funds that will be used to consummate the transactions;

(j)        include satisfactory evidence of committed financing or other financial ability to consummate the transactions contemplated by the Modified Asset Purchase Agreement in a timely manner;

(k)       expressly acknowledge and represent that the Potential Bidder (i) has had an opportunity to conduct any and all due diligence regarding the Property prior to making its bid (unless the bidder (a) has been designated a Stalking Horse Purchaser, in which case such bidder must perform any and all due diligence by _____, 2018 at 5:00 p.m. (prevailing Central Time), or (b) the Debtor has not designated a Stalking Horse Purchaser, in which case any Successful Bidder at the Auction may perform any and all due diligence by the Sale Hearing, (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and the Property in making its Bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Property or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Modified Asset Purchase Agreement ultimately accepted and executed by the applicable Debtor;

(l)        not contain any financing contingencies of any kind;

(m)      not contain any condition to closing of the transaction on the receipt of any third party approvals (excluding required Court approval and any required governmental and/or regulatory approval, if any);

(n)       include evidence of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Modified Asset Purchase Agreement;

(o)       include a good faith deposit (the "Good Faith Deposit") in the form of a certified or bank check (or other form acceptable to the Debtor in their sole and absolute discretion) payable to the order of IO at Tech Ridge, LP in an amount equal to ten (10%) percent of the purchase price offered to purchase the Assets. All Good Faith Deposits shall be held in a segregated account by the Debtor until no later than ten (10) days after the Sale Hearing and thereafter returned to the respective bidders in accordance with these Bid Procedures, unless the bidder has been selected as the Back-Up Bidder (as defined herein).

The Debtor shall make a determination regarding whether a bid is a Qualified Bid and shall notify bidders whether their bids have been determined to be Qualified Bids by no later than _____, 2018 at 5:00 p.m. (prevailing Central Time). To the extent a Stalking Horse Purchaser is designated, the Stalking Horse Purchaser will be deemed a Qualified Bidder, and any Stalking Horse Agreement will constitute a Qualified Bid for all purposes.

## G.    Auction, Auction Procedures, and Overbids

In the event that the Debtor receives one or more timely Qualified Bids with an acceptable purchase price, the Debtor shall conduct the Auction. The Auction, if required, will be conducted at the offices of Debtor's counsel, 100 Congress Ave., Suite 1800, Austin, Texas on _____, 2018 at 9:30 a.m. (prevailing Central Time), or such other location as designated by the Debtor in a notice to all Qualified Bidders. The Debtor has the sole right to adjourn or cancel the Auction at or prior to the Auction.

The Auction shall be governed by the following procedures, subject to modification by the Debtor at the Auction:

(a)    The Qualified Bidders shall appear in person at the Auction, or through a duly authorized representative.

(b)    Only representatives of the Debtor, holders of Qualified Bids may attend the Auction.

(c)    Only the Qualified Bidders shall be entitled to make any subsequent bids at the Auction.

(d)    Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale.

(e)    Bidding shall commence at the amount of the Stalking Horse Bid, or if there is no Stalking Horse Bid, the Qualified Bid that the Debtor determines in its business judgment to be the highest or best Qualified Bid (the "*Initial Highest Bid*").

(f)    Qualified Bidders may then submit successive bids higher than the previous bid, based on and increased from the Initial Highest Bid, in increments of $50,000. The Debtor reserves the right, in its discretion and subject to the exercise of its business judgment, to announce reductions or increases in minimum incremental bids at any time during the Auction. All Qualified Bidders shall have the right to submit additional bids and make additional modifications to the Asset Purchase Agreement or their respective Modified Asset Purchase Agreement, as applicable, at the Auction to improve such bids. The Auction may include individual negotiations with the Qualified Bidders and/or open bidding in the presence of all other Qualified Bidders.

(g)    The Debtor reserves the right to (x) determine, in their reasonable discretion, which bid is the highest or otherwise best and (y) reject at any

time, without liability, any offer that the Debtor, in their reasonable discretion, deem to be (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or procedures set forth therein or in the Bid Procedures Order, or (3) contrary to the best interests of the Debtor and its estate.

(h)     The Auction among Qualified Bidders shall continue according to these procedures until the Debtor determines, subject to Court approval, that the Debtor has received the Successful Bid. In making this decision, the Debtor may consider, without limitation, the amount of the purchase price, the form of consideration being offered, the likelihood of the Qualified Bidders' ability to close a given transaction, the proposed timing thereof, and rights of such Qualified Bidder and the Debtor with respect to the termination thereof, the number, type and nature of any changes reflected in the Modified Asset Purchase Agreement requested by each Qualified Bidder, and the net benefit to the Debtor's estate. The Qualified Bidder submitting the Successful Bid(s) for the Property shall become the Successful Bidder(s) and shall have such rights and responsibilities of a purchaser, as set forth in the Modified Asset Purchase Agreement or Asset Purchase Agreement, as applicable.

Bids made after the close of the Auction shall not be considered by the Debtor. All Qualified Bidders at the Auction shall be deemed to have consented to the exclusive jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction.

On or before _____, 2018, the Debtor shall cause the results of the Auction, including a copy of the Successful Bid, the identity of the Successful Bidder, and the Successful Bidder's proposed form of adequate assurance of future performance, to be filed with the Bankruptcy Court.

## H.     **Back-Up Bidder and Return of Good Faith Deposits**

If an Auction is conducted, the Qualified Bidder with the next highest or otherwise best Qualified Bid for the Property at the Auction (the "***Back-Up Bid***") shall be required to serve as the back-up bidder (the "***Back-Up Bidder***") and keep such Back-Up Bid open and irrevocable until the first to occur of (i) sixty (60) days after the completion of the Auction, (ii) consummation of the transaction with the Successful Bidder, or (iii) the Back-Up Bidder's receipt of notice from the Debtor of the release by the Debtor of the Back-Up Bidder's obligations. Following the Sale Hearing, if the Successful Bidder fails to consummate an approved Sale Transaction because of a breach or failure to perform on the part of such Successful Bid or otherwise, the Back-Up Bidder will be deemed to be the new Successful Bidder, and the Debtor will be authorized, but not required, to consummate the sale with the Back-Up Bidder without further order of the Court.

Except as provided herein, Good Faith Deposits shall be returned without interest to each bidder not selected by the Debtor as the Successful Bidder or the Back-Up Bidder by no later than the tenth (10th) business day following the conclusion of the Auction. The Good Faith Deposit of

the Back-Up Bidder shall be held by the Debtor until ten (10) business days after the closing of the Sale Transaction with the Successful Bidder or termination of the Back-Up Bid as provided above.

**I.**      **Reservation of Rights**

The Debtor reserves the right, in its sole and absolute discretion and subject to the exercise of their business judgment, to make alterations to these Bid Procedures and/or terminate discussions with any and all prospective acquirers at any time and without specifying the reasons therefor, but only to the extent not materially inconsistent with the Bid Procedures, but including changes so as to modify deposit amounts and to modify or eliminate the requirements with respect to Back-Up Bidders.

**J.**      **Sale Hearing**

The Successful Bid(s) will be subject to approval by the Bankruptcy Court. The Sale Hearing will take place on _____, 2018 at _____ .m. (prevailing Central Time). The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open Court on the date scheduled for the Sale Hearing or on the Court's docket.

The Debtor's presentation to the Bankruptcy Court for approval of a Successful Bid does not constitute the Debtor's acceptance of the bid. The Debtor will be deemed to have accepted a bid only when the bid has been approved by order of the Bankruptcy Court.

**K.**      **Reservation of Rights**

The Debtor reserves the right, to make alterations to these Bid Procedures and/or terminate discussions with any and all prospective acquirers at any time and without specifying the reasons therefor, but only to the extent not materially inconsistent with the Bid Procedures, but including changes so as to modify deposit amounts and to modify or eliminate the requirements with respect to Back-Up Bidders.

Respectfully submitted,

WALLER LANSDEN DORTCH & DAVIS, LLP

By:    */s/ Eric J. Taube*
    Eric J. Taube
    State Bar No. 19679350
    Eric.taube@wallerlaw.com
    Mark C. Taylor
    State Bar No. 19713225
    mark.taylor@wallerlaw.com
    100 Congress Ave., Suite 1800
    Austin, Texas 78701
    Telephone: (512) 685-6400
    Telecopier: (512) 685-6417

ATTORNEYS FOR DEBTOR AND DEBTOR IN
POSSESSION

**<u>Exhibit 2</u>**


**Sale Notice**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **IO at TECH RIDGE, LP** | § | **CASE NO. 17-11540-tmd** |
| *Debtor* | § | **(Chapter 11)** |
| | § | |

## NOTICE OF AUCTION, STALKING HORSE HEARING AND SALE HEARING

PLEASE TAKE NOTICE that on December 11, 2017, IO at Tech Ridge, LP (the "***Debtor***"), filed a voluntary petition for relief pursuant to chapter 7 of Title 11 of the United States Code. The bankruptcy case was subsequently converted to a case under Chapter 11 of the Bankruptcy Code (the "***Bankruptcy Code***").

PLEASE TAKE NOTICE that on _____, 2018, the United States Bankruptcy Court for the Western District of Texas, Austin Division (the "***Bankruptcy Court***") entered an order (the "***Bid Procedures Order***") approving the *Debtor's Motion for (I) Order Approving (A) Bid Procedures, Including Procedures for Selection of Stalking Horse Purchasers, (B) Procedures for Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Related Notices, (C) Notice of Auction, Stalking Horse Hearing and Sale Hearing, and (D) Related Relief and (II) Order (A) Approving the Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests Pursuant to Bankruptcy Code Sections 105, 363(b), (f), and (m), (B) Approving Assumption, Assignment and Sale of Certain Executory Contracts and Unexpired Leases Pursuant to Bankruptcy Code Sections 363 and 365 and Related Cure Amounts, and (C) Granting Related Relief* (the "***Sale Motion***"), filed by the Debtor.[1] The Sale Motion and Bid Procedures Order also sought to establish (i) an auction (the "***Auction***"), (ii) a hearing (the "***Stalking Horse Hearing***") to approve the Debtor's selection of any stalking horse purchaser ("***Stalking Horse Purchaser***") and provision of bid protections thereto (the "***Bid Protections***"), if any, and (iii) a final hearing (the "***Sale Hearing***") to approve the sale of approximately 28 acres of real estate, with all improvements and materials located on the real estate, and with a street address of 12600 McCallen Pass, Austin, Texas (the "Property"), all as more fully described in the Sale Motion.

PLEASE TAKE FURTHER NOTICE that pursuant to the Bid Procedures Order the Debtor is authorized to enter into an agreement (the "***Stalking Horse Agreement***") with a Stalking Horse Purchaser for, the Assets. Any and all Potential Bidders interested in becoming a Stalking Horse Purchaser must submit a Qualified Bid **by _____, 2018 at 5:00 p.m. (prevailing Central Time)**. In the event the Debtor enters into a Stalking Horse Agreement, the Debtor will file and serve notice of the designation of the proposed Stalking Horse Purchaser

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Motion.

and the proposed Stalking Horse Agreement on the Notice Parties by _____, 2018 at ____. (prevailing Central Time).

   PLEASE TAKE FURTHER NOTICE that in the event the Debtor enters into a Stalking Horse Agreement, the Stalking Horse Hearing to approve the Stalking Horse Purchaser, Stalking Horse Agreement, and accompanying Bid Protections on an expedited basis will be held before the Tony Davis, United States Bankruptcy Judge on _____, 2018 at _____ _.m. (prevailing Central Time), or at such other time as the Court is available. Any objections to the approval of any Stalking Horse Purchaser, Stalking Horse Agreement, and Bid Protections must be filed and served so as to be actually received by the Objection Recipients (as defined below) by no later than _____, 2018 at 5:00 p.m. (prevailing Central Time).

   PLEASE TAKE FURTHER NOTICE that pursuant to the Bid Procedures Order, if the Debtor receives one or more timely and acceptable Qualified Bids (as defined in the Bid Procedures Order) for the Property, the Auction shall take place on _____, 2018 _____, 2018 at _____ a.m. (prevailing Central Time) at the offices of Waller Lansden Dortch & Davis LLP, 100 Congress Ave., Suite 1800, Austin, Texas 78701 or such other location as designated by the Debtor in a notice to all Qualified Bidders. Only representatives of the Debtor and holders of Qualified Bids, shall be entitled to be present at the Auction, and only parties that have submitted a Qualified Bid, as set forth in the Bid Procedures Order, by no later than _____, 2018 at 5:00 p.m. (prevailing Central Time) (the "*Bid Deadline*") may bid at the Auction. Any party that wishes to take part in this process and submit a bid for the Assets must submit their competing bid prior to the Bid Deadline and in accordance with the Bid Procedures.

   PLEASE TAKE FURTHER NOTICE that the Sale Hearing to consider approval of the sale of the Property to the winning bidder at the Auction, free and clear of all liens, claims, encumbrances and other interests, will be held before the Honorable Tony Davis at the Bankruptcy Court, 903 San Jacinto, Austin, Texas 78701, Courtroom #1, Austin, Texas 78701 on _____, 2018 at _____ _.m. (prevailing Central Time), or at such other time as the Court is available.

   PLEASE TAKE FURTHER NOTICE that objections to the sale, if any, must be filed and served so as to be actually received by the Objection Recipients no later than _____, 2018 at 5:00 p.m. (prevailing Central Time).

   PLEASE TAKE FURTHER NOTICE that the Objection Recipients are (i) the Office of the United States Trustee for the Western District of Texas, (ii) counsel to the Debtor, Waller Lansden Dortch & Davis, LLP, Eric J. Taube, 100 Congress Avenue, 18th Floor, Austin, Texas 78701, eric.taube@wallerlaw.com; and (iii) if applicable, any Stalking Horse Purchaser selected by the Debtor.

   **PLEASE TAKE FURTHER NOTICE THAT UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND THE BANKRUPTCY COURT**

**MAY GRANT THE RELIEF REQUESTED IN THE SALE MOTION WITHOUT FURTHER HEARING AND NOTICE.**

PLEASE TAKE FURTHER NOTICE that this Notice of Auction, Stalking Horse Hearing and Sale Hearing is subject to the fuller terms and conditions of the Sale Motion and the Bid Procedures Order, with such Bid Procedures Order controlling in the event of any conflict, and the Debtor encourage parties in interest to review such documents in their entirety. Parties interested in receiving more information regarding the sale of the Assets and/or copies of any related document, including the Sale Motion, the form of Asset Purchase Agreement filed with the Sale Motion, or the Bid Procedures Order, may make a written request to Waller Lansden Dortch & Davis, LLP, Eric J. Taube, 100 Congress Avenue, 18th Floor, Austin, Texas 78701. In addition, copies of the Sale Motion, the Bid Procedures Order and this Notice may be examined by interested parties on the Court's electronic docket for the Debtor' chapter 11 cases, which is posted on the Internet at PACER (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov).

Dated: _____, 2018
Austin, Texas

> Respectfully submitted,
>
> WALLER LANSDEN DORTCH & DAVIS, LLP
>
> By:___ */s/ Eric J. Taube*_____
> Eric J. Taube
> State Bar No. 19679350
> Eric.taube@wallerlaw.com
> Mark C. Taylor
> State Bar No. 19713225
> mark.taylor@wallerlaw.com
> 100 Congress Ave., Suite 1800
> Austin, Texas 78701
> Telephone: (512) 685-6400
> Telecopier: (512) 685-6417
>
> ATTORNEYS FOR DEBTOR AND DEBTOR IN POSSESSION

**Exhibit 3**

**Notice of Assignment and Assumption**

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **IO at TECH RIDGE, LP** | § | **CASE NO. 17-11540-tmd** |
| *Debtor* | § | **(Chapter 11)** |
| | § | |

### NOTICE OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES WHICH MAY BE ASSUMED AND ASSIGNED IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR' ASSETS AND THE PROPOSED CURE AMOUNT WITH RESPECT THERETO

You are receiving this *Notice of Executory Contracts and Unexpired Leases Which May Be Assumed and Assigned in Connection With the Sale of Substantially All of the Debtor's Assets and the Proposed Cure Amount With Respect Thereto* (the "*Notice of Assumption and Assignment*") because you may be a counterparty to an executory contract or unexpired lease with IO at Tech Ridge, LP (collectively, the "*Debtor*"). Please read this notice carefully as your rights may be affected by the transactions described herein.

PLEASE TAKE NOTICE that on _____ [ ], 2018, the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "*Bankruptcy Court*") entered an order (the "*Bid Procedures Order*") approving the *Debtor' Motion for (I) Order Approving (A) Bid Procedures, Including Procedures for Selection of Stalking Horse Purchasers, (B) Procedures for Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Related Notices, (C) Notice of Auction, Stalking Horse Hearing and Sale Hearing, and (D) Related Relief and (II) Order (A) Approving the Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests Pursuant to Bankruptcy Code Sections 105, 363(b), (f), and (m), (B) Approving Assumption, Assignment and Sale of Certain Executory Contracts and Unexpired Leases Pursuant to Bankruptcy Code Sections 363 and 365 and Related Cure Amounts, and (C) Granting Related Relief* (the "*Sale Motion*"), filed by the Debtor.[1] The Sale Motion and Bid Procedures Order set forth certain procedures (the "*Bid Procedures*") in connection with the sale of the Property (the "*Sale Transaction*").

PLEASE TAKE FURTHER NOTICE that pursuant to the Bid Procedures Order, the Debtor has established procedures for the assumption, assignment and sale of certain executory contracts and unexpired leases (collectively, the "*365 Contracts*") to a potential purchaser and the determination of related Cure Costs (as defined herein). The Debtor is a party to 365 Contracts and, in accordance with the Bid Procedures Order, hereby file this notice identifying (i) the 365 Contracts which may be assumed and assigned to a Successful Bidder in connection with the Sale Transaction and (ii) the proposed amounts, if any, the Successful Bidder believes are owed to the counterparty to the 365 Contract to cure all defaults or arrears existing under the 365 Contract (the "*Cure Costs*"), both as set forth on **Exhibit 1** attached hereto.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Motion.

PLEASE TAKE FURTHER NOTICE that the listing of a 365 Contract on **Exhibit 1** does not constitute an admission that the agreement is an executory contract or unexpired lease as contemplated by section 365(a) of the Bankruptcy Code or that the Debtor has any liability thereunder, and the Debtor expressly reserves all of its rights, claims, causes of action and defenses with respect to the 365 Contracts listed on **Exhibit 1**.

PLEASE TAKE FURTHER NOTICE that any objections to the assumption, assignment, and sale of any 365 Contract identified in this Notice (except with respect to the adequate assurance of future performance by any Successful Bidders), must be (i) in writing, (ii) filed with the Bankruptcy Court and (iii) served on (i) the Office of the United States Trustee for the Western District of Texas; (ii) counsel to the Debtor, Waller Lansden Dortch & Davis, LLP, Eric J. Taube, 100 Congress Avenue, 18th Floor, Austin, Texas 78701, eric.taube@wallerlaw.com; (iii) the Successful Bidder (collectively, the "*Objection Recipients*") by _____, 2018 **at 5:00 P.M.** (prevailing Central time) (the "*Assumption and Assignment Objection Deadline*"). Any such objections must set forth any objection to the possible assumption, assignment, and sale of the 365 Contracts (and must state, with specificity, the legal and factual basis thereof) and, if applicable, the proposed Cure Costs (and must state, with specificity, what Cure Costs are required with appropriate documentation in support thereof).

PLEASE TAKE FURTHER NOTICE that if a counterparty to a 365 Contract files a timely objection asserting a higher cure amount than the maximum Cure Costs, and the parties are unable to consensually resolve the dispute prior to the hearing to resolve any such objection (on or about_____, 2018) (the "*Assumption/Assignment Hearing*"), the amount to be paid or reserved with respect to such objection will be determined at the Assumption/Assignment Hearing. All other objections to the proposed assumption and assignment of the Debtor's right, title, and interest in, to and under the 365 Contracts, if it is ultimately designated a 365 Contract that the Successful Bidder proposes be assumed, assigned, and sold to it in connection with the transaction (a "**Desired 365 Contract**"), will also be heard at the Assumption/Assignment Hearing, unless the Desired 365 Contract has not been identified until after _____, 2018, in which event any determination (including the resolution of any dispute with respect to Cure Costs) shall be determined within thirty (30) days after the Closing.

**PLEASE TAKE FURTHER NOTICE** that if no objection is timely filed and served, the counterparty to a 365 Contract shall be deemed to have consented to the assumption, assignment and sale of the 365 Contract to any Successful Bidder if such 365 Contract is designated by any Successful Bidder as a Desired 365 Contract and shall be forever barred from asserting any objection with regard to such assumption, assignment and sale, except with respect to the adequate assurance of future performance by any Successful Bidder. Any objections to any Successful Bidder's proposed form of adequate assurance of future performance must be raised at the Assumption/Assignment Hearing and will be resolved at the Assumption/Assignment Hearing. The Cure Costs provided to the contract counterparty shall be controlling, notwithstanding anything to the contrary in any 365 Contract, or any other document, and the counterparty to the 365 Contract shall be deemed to have consented to the Cure Costs and shall be forever barred from asserting any other claims related to such 365 Contract against the Debtor or the Successful Bidder, or the property of any of them.

PLEASE TAKE FURTHER NOTICE that on or before_____, 2018, the Debtor will file the Successful Bidder's proposed form of adequate assurance of future performance with the Bankruptcy Court.

PLEASE TAKE FURTHER NOTICE that although the Debtor has made a good faith effort to identify all 365 Contracts that may be susceptible to being assumed and assigned in connection with the Sale Transaction, they may discover additional contracts that the Debtor and the Successful Bidder desire to assume and assign in connection therewith. Accordingly, if at any time after the entry of the Sale Order, the Debtor identify additional prepetition executory contracts that may be subject to being assumed and assigned to the Successful Bidder(s), the Debtor shall serve a supplemental notice of assumption and assignment (the "*Supplemental Assumption and Assignment Notice*") by facsimile, electronic transmission, hand delivery or overnight mail on (i) the counterparty to each supplemental 365 Contract at the last known address available to the Debtor and ii) all parties who have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002 by no later than ten (10) days before the proposed effective date of the assignment. Each such Supplemental Assumption and Assignment Notice shall set forth (i) the name and address of the contract counterparty, (ii) notice of the proposed effective date of the assignment (subject to the right of Successful Bidder to withdraw such request for assumption and assignment of the contract prior to the Closing), (iii) identification of the Contract, (iv) the Cure Costs, if any, to the extent such 365 Contract has been designated for assumption and assignment by a Successful Bidder, and (v) the proposed adequate assurance.

PLEASE TAKE FURTHER NOTICE that this Notice of Assumption and Assignment is subject to the fuller terms and conditions of the Sale Motion and the Bid Procedures Order, with such Bid Procedures Order controlling in the event of any conflict, and the Debtor encourages parties-in-interest to review such documents in their entirety. Parties with questions regarding the proposed assumption, assignment, and sale procedures contained herein should contact the Debtor' counsel at the contact information provided below.

The inclusion of a 365 Contract on **Exhibit 1** does not mean that such 365 Contract will be assumed or assigned in connection with the Sale Transaction or that the Debtor or any Successful Bidder will make any cure payment in connection with such 365 Contract.

Dated: _____, 2018
Austin, Texas

           Respectfully submitted,

           WALLER LANSDEN DORTCH & DAVIS, LLP

           By:   */s/ Eric J. Taube*
               Eric J. Taube
               State Bar No. 19679350
               Eric.taube@wallerlaw.com
               Mark C. Taylor
               State Bar No. 19713225
               mark.taylor@wallerlaw.com
               100 Congress Ave., Suite 1800
               Austin, Texas 78701
               Telephone:  (512) 685-6400
               Telecopier:  (512) 685-6417

           ATTORNEYS FOR DEBTOR AND DEBTOR IN
           POSSESSION

# Exhibit 1

## 365 Contracts

# EXHIBIT B

**Sale Order**

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **IO at TECH RIDGE, LP** | § | **CASE NO. 17-11540-tmd** |
| *Debtor* | § | **(Chapter 11)** |
| | § | |

## ORDER (A) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363(b), (f) AND (m), (B) APPROVING THE ASSUMPTION, ASSIGNMENT, AND SALE OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO BANKRUPTCY CODE SECTIONS 363 AND 365 AND RELATED CURE AMOUNTS, AND (C) GRANTING RELATED RELIEF

Upon the Motion, dated _____, 2018 (the "***Motion***")[1] of IO at Tech Ridge,

LP, as Debtor and Debtor in possession (the "***Debtor***") for an order pursuant to sections 105,

363, and 365 of title 11 of the United States Code (the "***Bankruptcy Code***"), Rules 2002, 6004,

and 6006 of the Federal Rules of Bankruptcy Practice and Procedure (the "***Bankruptcy Rules***"),

and the Local Rules of the United States Bankruptcy Court for the Western District of Texas (the

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Asset Purchase Agreement (as defined herein).

"*Local Rules*") (i) approving (a) bid procedures for the sale of approximately 28 acres of real property, all improvements and construction material located on the real property with the street address of 12600 McCallen Pass, Austin, Texas (the "Property"), including the procedures for selecting one or more Stalking Horse Purchaser, (b) approving the procedures for the assumption, assignment, and sale of executory contracts and unexpired leases, including notice of proposed cure costs (the "*Assumption and Assignment Procedures*"), (c) establishing a date for an auction if the Debtor receive one or more timely and acceptable Qualified Bids (the "*Auction*"), a hearing to approve the Debtor's selection of one or more Stalking Horse Purchasers, if any, and the provision of bid protections to such Stalking Horse Purchasers (the "*Bid Protections*"), if any, (the "*Stalking Horse Hearing*"), and a final hearing (the "*Sale Hearing*") to approve the sale of the Property (the "*Sale Transaction*"), (d) approving the form and manner of notice of the Auction, Stalking Horse Hearing, Sale Hearing, and the Assumption and Assignment Procedures and (e) granting related relief and an (ii) order (a) approving the sale of the Debtor's Property free and clear of all liens,[2] claims, encumbrances, and other interests pursuant to sections 105 and 363 of the Bankruptcy Code, (b) approving the assumption, assignment, and sale of certain executory contracts and unexpired leases pursuant to sections 363 and 365 of the Bankruptcy Code and related Cure Costs, and (c) granting related relief, all as more fully described in the Motion; and this Court having entered an order on _____

[ ], 2018 (Doc. \_\_) (the "*Bid Procedures Order*" and Exhibit 1 attached thereto, the "*Bid Procedures*"); and the Auction having been set for _____, 2018_____, 2018 in accordance with the Bid Procedures Order; [and only the Buyer[s] (as defined herein) having been deemed a Qualified Bidder[s] and having

---

[2] As used herein, the term "liens" shall include, without limitation, "Liens" as defined in the Asset Purchase Agreement (as defined herein).

submitted a Qualified Bid[s] for the Properties]; [and [NUMBER] Qualified Bidders having submitted competing bids for the Properties; and an Auction having been held on _____, 2018; and the Debtor having determined that Buyer represents the highest and otherwise best bid for the Property]; and a final hearing (the "*Sale Hearing*") to approve the sale of the Property (the "*Sale Transaction*") having been held on _____, 2018 to consider approval of the Asset Purchase Agreement (as defined herein); and the Court having determined that notice of the Motion was adequate and sufficient; and all such parties having been afforded due process and an opportunity to be heard with respect to the Motion and all relief requested therein; and the Court having reviewed and considered: (i) the Motion; (ii) the objections and responsive pleadings filed in connection with the Motion, if any; and (iii) the representations of counsel made, and the evidence proffered, at the Sale Hearing; and the Sale Hearing having been held, and after due deliberation and sufficient cause appearing therefor, hereby finds and determines that:

A. **Jurisdiction and Venue**. The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference from the United States District Court for the Western District of Texas*, the consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b), and venue is proper under 28 U.S.C. §§ 1408 and 1409.

B. **Final Order**. This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

C. **Statutory Predicates**. The statutory predicates for the relief sought in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006.

D.    **Notice**. The service of the Motion on the Notice Parties (as defined in the Bid Procedures Order) and the Sale Hearing and the proposed entry of this Order to the Sale Notice Parties (as defined in the Bid Procedures Order) was adequate and sufficient under the circumstances of these chapter 11 cases, and such notice complied with all applicable requirements under the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Bid Procedures Order. With respect to entities whose identities were not reasonably ascertained by the Debtor, notice was sufficient and reasonably calculated under the circumstances to reach such entities. Accordingly, no further notice of, or hearing on, the Motion, the Sale Hearing, the Asset Purchase Agreement, the Sale Transaction, the related assumption and assignment of certain executory contracts and unexpired leases and Cure Costs, or this Order is necessary or required.

E.    **Compliance with Bid Procedures Order**. As demonstrated by (i) evidence adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Debtor has conducted a fair and open sale process in a manner reasonably calculated to produce the highest and otherwise best offer for the Property in compliance with the Bid Procedures Order. The Bid Procedures were substantively and procedurally fair to all parties. The sale process, Bid Procedures and Auction were non-collusive, duly noticed, and afforded a full, fair, and reasonable opportunity for any Person to make a higher and otherwise better offer to purchase the Property. The bidding and related procedures established by the Bid Procedures Order have been complied with in all material respects by the Debtor and the Buyer.

F.    **Successful Bidder**. At the Auction held on _____, 2018, the Buyer offered and the Debtor accepted, the highest and best Qualified Bid (as defined in the Bid Procedures), which is a cash bid in the amount of [PRICE], subject to adjustment as set forth

in that certain Asset Purchase Agreement, dated as of [DATE], 2018 (as amended, supplemented, or otherwise modified from time to time, including all Exhibits, Schedules, and Appendices thereto (the "***Asset Purchase Agreement***," attached hereto as **Exhibit 1**) by and among the Debtor and [PARTY] (the "***Buyer***"). The Buyer is approved as the Successful Bidder, as such term is defined in the Bid Procedures, for the Property on the terms set forth in the Asset Purchase Agreement by and among the Buyer and the Debtor.

G.      **Back-Up Bidder**. [At the Auction held on _____, 2018, [PARTY] offered the next highest or otherwise best Qualified Bid, which is a cash bid in the amount of [PRICE], subject to adjustment as set forth in the Bid Procedures Order and/or Back-Up Bidder Agreement (as defined below). [PARTY] is approved as the Back-Up Bidder, as such term is defined in the Bid Procedures, for the Property on the terms set forth in the form of the Back-Up Bidder's asset purchase agreement (the "***Back-Up Bidder Agreement***") attached hereto as **Exhibit 2**.]

H.      **Corporate Authority**. The Debtor have taken all corporate or other entity action necessary to authorize and approve the Asset Purchase Agreement and the consummation of the Sale Transaction and the Debtor's sale of the Property to the Buyer has been duly and validly authorized by all necessary corporate or other entity action. The Debtor has full corporate or other entity power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby and to consummate the Sale Transaction. No consents or approvals, other than those expressly provided for in the Asset Purchase Agreement, are required for the Debtor to consummate the Sale Transaction.

I.      **Business Justification**. Approval of the Asset Purchase Agreement and consummation of the Sale Transaction is in the best interests of the Debtor, the estate, creditors,

and other parties in interest. The Debtor has demonstrated good, sufficient, and sound business purposes and justifications for the sale to the Buyer pursuant to section 363(b) of the Bankruptcy Code. Such business purposes and justifications include, but are not limited to, that the Asset Purchase Agreement and the closing thereon will present the best opportunity to realize the value of the Property and avoid decline and devaluation of the Property.

J.        The consideration to be provided by the Buyer pursuant to the Asset Purchase Agreement: (i) is fair and reasonable; (ii) is the highest and otherwise best offer for the Property; (iii) will provide a greater recovery for the Debtor's creditors than would be provided by any other practically available alternative; and (iv) constitutes reasonably equivalent value and fair consideration. In reaching this determination, the Court has taken into account both the consideration to be realized directly by the Debtor's estate and the indirect benefits of the Sale Transaction for the Debtor's vendors, suppliers, and creditors. The Debtor's determination that the Asset Purchase Agreement constitutes the highest and otherwise best offer for the Property is a result of due deliberation by the Debtor and constitutes a valid and sound exercise of the Debtor's business judgment. Entry of an order approving the Sale Motion, Asset Purchase Agreement and the Sale Transaction is a necessary condition precedent to the Buyer consummating the Sale Transaction.

K.        **Arm's-Length Sale**. The Asset Purchase Agreement was negotiated, proposed, and entered into by the Debtor and the Buyer without collusion, in good faith, and was the result of arm's-length bargaining between the parties represented by independent counsel. The Back-Up Bidder Agreement was negotiated and proposed by the Debtor and [PARTY], in good faith, without collusion, and was the result of arm's-length bargaining between the parties represented by independent counsel. The Debtor and the Buyer have not engaged in any conduct that would

cause or permit the Asset Purchase Agreement to be avoided under section 363(n) of the Bankruptcy Code. The Buyer is not an "insider" or "Affiliate" of the Debtor, as such terms are defined in the Bankruptcy Code.

L. **Good Faith Purchaser**. The Buyer is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. The Buyer is acting in good faith within the meaning of section 363(m) in consummating the Sale Transaction. The Buyer has proceeded in good faith in all respects in that, *inter alia*: (i) the Buyer recognized that the Debtor was free to deal with any other party interested in acquiring the Property; (ii) the Buyer complied with the provisions of the Bid Procedures Order; (iii) the Buyer's bid was subjected to the competitive bid procedures set forth in the Bid Procedures Order; (iv) no common identity of directors or officers exists among the Buyer and the Debtor, and (v) all payments to be made by the Buyer and all other material agreements or arrangements entered into by the Buyer and the Debtor in connection with the Sale Transaction have been disclosed.

M. **Legal, Valid and Binding Transfer**. The Debtor is the sole and lawful owner of the Property, or otherwise have a valid, enforceable property interest in such, and title thereto is vested in the Debtor's estate within the meaning of section 541(a) of the Bankruptcy Code. The Debtor has all right, title, and interest in the Property required to transfer and convey the Property to the Buyer. The transfer of the Property to the Buyer will be a legal, valid, and effective transfer of the Property and, except as provided in the Asset Purchase Agreement, will vest the Buyer with all right, title, and interest of the Debtor to the Property free and clear of all liens, claims, encumbrances, and other interests of any kind and every kind whatsoever (including liens, claims, encumbrances, and other interests of any Governmental Authority, as

defined in the Asset Purchase Agreement) other than those liens, claims, encumbrances, and other interests specifically assumed by the Buyer pursuant to the Asset Purchase Agreement. The sale of the Property shall also be free and clear of those liens, claims, encumbrances, and other interests that purport to give to any party a right or option to effectuate any forfeiture, modification, or termination of the Debtor's interests in the Property, or any similar rights.

N.     The Asset Purchase Agreement is a valid and binding contract between the Debtor and the Buyer, which is and shall be enforceable according to its terms.

O.     **Free and Clear**. The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the Sale Transaction, thus adversely affecting the Debtor, its estate, and its creditors, if the transfer of the Property to the Buyer and the assumption and assignment of the Desired 365 Contracts, to the Buyer were not free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever, except for the Permitted Post-Closing Liens and the Assumed Liabilities, or if the Buyer would, or in the future could, be liable for any such lien, claim, encumbrance, or other interest. A sale of the Properties other than one free and clear of any liens, claims, encumbrances, and other interests, except for the Permitted Post-Closing Liens and the Assumed Liabilities, would adversely impact the Debtor's estate and would yield substantially less value for the Debtor's estate.

P.     Subject to the provisions of this Order and except as may be specifically provided in the Asset Purchase Agreement, the Debtor may sell the Property free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever, except for the Permitted Post-Closing Liens and the Assumed Liabilities, because, in each case, one or more of the standards set forth in section 363(f)(1) through (5) of the Bankruptcy Code have been satisfied. Each entity with a lien, claim, encumbrance, or other interest in the Property to be

transferred on the Closing Date: (i) has, subject to the terms and conditions of this Order, consented to the Sale Transaction or is deemed to have consented; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such lien, claim, encumbrance, or other interest; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code. Those holders of liens, claims, encumbrances, and other interests who did not object to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

Q. **Not a *Sub Rosa* Plan**. The Asset Purchase Agreement and Sale Transaction do not constitute an impermissible *sub rosa* chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford. The Asset Purchase Agreement and the Sale Transaction neither impermissibly restructure the rights of Debtor's creditors nor impermissibly dictate the terms of a plan for the Debtor.

R. **No Fraudulent Transfer**. The Asset Purchase Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States or any state, territory, or possession thereof, or the District of Columbia. The Debtor and the Buyer are not entering into the Sale Transaction fraudulently.

S. **No Successor Liability**. The Buyer and its Affiliates (i) are not, and shall not be, considered a successor in interest to the Debtor, (ii) have not, *de facto* or otherwise, merged with or into the Debtor, (iii) are not a continuation or substantial continuation of the Debtor or any enterprise of the Debtor, and (iv) are not holding themselves out to the public as a continuation of the Debtor. Except as otherwise specifically provided in the Asset Purchase Agreement, the (i) transfer of the Property to the Buyer and (ii) assumption by the Debtor and assignment and sale to the Buyer of the Desired 365 Contracts does not and will not subject the Buyer or any of its Affiliates to any Liability (as defined in the Asset Purchase Agreement) whatsoever with

respect to the operation of the Debtor's business before the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of antitrust, successor, transferee, or assignee Liability.

T.   **Assumption and Assignment of Executory Contracts and Unexpired Leases**. Notice of the Debtor's assumption and assignment and sale to the Buyer of the Desired 365 Contracts will be provided to all counterparties to a Desired 365 Contract, together with a statement therein from the Debtor with respect to the amount, if any, to be paid to such counterparty to cure any defaults under the Desired 365 Contracts (the "***Cure Costs***"), and to otherwise comply with the requirements of section 365(b) of the Bankruptcy Code with respect to the Desired 365 Contracts. As to each Desired 365 Contract, the counterparties have until November 11, 2016 (the "**Assumption/Assignment Objection Deadline**"), by which to file an objection with respect to the proposed assumption and assignment and/or the Cure Costs, as set forth on **Exhibit 3** hereto.

U.   Any objection filed by the Assumption/Assignment Objection Deadline shall be heard on _____, 2018 at ____ _.m.

V.   **Prompt Consummation**. The Sale Transaction must be approved and consummated promptly to preserve the viability of the business and maximize the value of the Debtor's estate. Time is of the essence in consummating the Sale Transaction.

W.   The Debtor has demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the transaction contemplated by the Asset Purchase Agreement, including, without limitation, the

Sale Transaction and the assumption and assignment of the Desired 365 Contracts, prior to, and outside of, a chapter 11 plan.

X.  **Good and Sufficient Cause**. There is other good and sufficient cause to grant the relief requested in the Motion and approve the Asset Purchase Agreement and the Sale Transaction.

Y.  **Legal and Factual Bases**. The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are adopted as such. To the extent any conclusions of law are findings of fact, they are adopted as such. The Court's findings shall also include any oral findings of fact and conclusions of law made by the Court during or at the conclusion of the Sale Hearing.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

**General Provisions**

1.  The notice of the Sale Motion and Sale Hearing are approved as being fair, reasonable, and adequate under the circumstances, and any additional notice as may otherwise be required under state and federal law is hereby deemed satisfied.

2.  The Motion is **GRANTED** to the extent set forth herein.

3.  All objections to the relief requested in the Motion or the entry of this Order, if any, that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing are denied and overruled in their entirety on the merits, with prejudice.

**Approval of Free and Clear Sale of the Property**

4.  The Asset Purchase Agreement, all exhibits and schedules thereto, and all of the terms and conditions thereof are hereby approved. The Debtor shall file final versions of the

Asset Purchase Agreement and all other ancillary documents with the Court upon closing the Sale Transaction.

5.      Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtor is authorized to (i) execute, deliver, and perform under, consummate, and implement the Asset Purchase Agreement and the Sale Transaction together with all additional instruments and documents that are requested by the Buyer and may be reasonably necessary or desirable to implement the Asset Purchase Agreement and the Sale Transaction and (ii) take any and all actions as they deem necessary, appropriate, or advisable for the purpose of assigning, transferring, granting, conveying, and conferring to the Buyer, or reducing to possession the Property, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Asset Purchase Agreement and the Sale Transaction, including, without limitation, any and all actions reasonably requested by the Buyer which are consistent with the Asset Purchase Agreement and the Sale Transaction.

6.      Pursuant to sections 105(a), 363(f), and 365(b) of the Bankruptcy Code, upon the Closing: (i) the transfer of the Property to the Buyer pursuant to the Asset Purchase Agreement shall constitute a legal, valid, and effective transfer of the Property and shall vest the Buyer with all right, title, and interest in and to the Property; (ii) the Property shall be transferred to the Buyer free and clear of all liens, claims, encumbrances, and other interests of any kind and every kind whatsoever (including, but not limited to, any liens, claims, encumbrances, and other interests of any Governmental Authority, any claims or assertions based on any theory of successor or transferee Liability, and any restriction on the use, transfer, receipt of income, or other exercise of any attributes of ownership of the Property) other than those liens, claims, encumbrances, and other interests specifically assumed by the Buyer pursuant to the Asset

Purchase Agreement; and (iii) all Persons are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, against Buyer and its Affiliates with respect to any such liens, claims, encumbrances, and other interests (including, but not limited to, any liens, claims, encumbrances, and other interests of any Governmental Authority (as defined in the Asset Purchase Agreement), any claims or assertions based on any theory of successor or transferee Liability, and any restriction on the use, transfer, receipt of income, or other exercise of any attributes of ownership of the Property).

7.       All liens, claims, encumbrances, and other interests shall attach to the proceeds of the sale with the same nature, validity, and priority as such liens, claims, encumbrances, or other interests encumbered the Property prior to the proposed sale and shall be distributed pursuant to further order of the Court.

8.       On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Debtor's interest in the Property or a bill of sale transferring good and marketable title in the Property.

9.       Pursuant to the Asset Purchase Agreement and this Order, the transfer and assignment of the Property shall be effectuated on the terms set forth therein and herein, and shall not be restricted or prohibited, notwithstanding any alleged approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, or similar rights with respect to the Debtor's transfer, sale, vesting, assumption, and/or assignment of the Property.

10.      This Order is and shall be effective as a determination that all liens, claims, encumbrances, and other interests shall be and are, without further action by any Person,

unconditionally released, discharged, and terminated with respect to the Property as of the Closing Date, except as may otherwise be set forth in the Asset Purchase Agreement.

11.     Except as otherwise provided herein or in the Asset Purchase Agreement, on the Closing Date, the Debtor's creditors are authorized and directed to execute such documents and instruments and to take all other actions as may be reasonably necessary to document and effectuate the release of their liens, claims, encumbrances, and other interests in the Property, if any, as such liens, claims, encumbrances, and other interests may have been recorded or may otherwise exist. If any such creditor fails to execute any such documents or instruments or take any such actions, the Buyer is authorized to execute such documents and instruments and to take such actions on behalf of the creditor so as to document the release of such liens, claims, encumbrances, and other interests.

### No Successor Liability

12.     The Buyer and its Affiliates, successors, and assigns shall not be deemed, as a result of any action taken in connection with the transfer of the Property, to (i) be a successor to the Debtor or its estate, (ii) have, *de facto* or otherwise, merged or consolidated with or into the Debtor or its estate, or (iii) be a continuation or substantial continuation of the Debtor or any enterprise of the Debtor, and the Buyer and its Affiliates shall have no successor, transferee or vicarious Liability of any kind or character, including, but not limited to, under any theory of foreign, federal, state or local antitrust, environmental, successor, tax, assignee or transferee liability, labor, product liability, employment, *de facto* merger, substantial continuity, or other law, rule, or regulation, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtor or any obligations of the Debtor arising prior to the Closing Date, including, but not limited to, liabilities on account of any Taxes or other Governmental Authority

fees, contributions, or surcharges arising, accruing, or payable under, out of, in connection with, or in any way relating to, the operation of the Property prior to the Closing Date. Except as otherwise provided herein or in the Asset Purchase Agreement, the transfer of the Property to the Buyer pursuant to the Asset Purchase Agreement shall not result in the Buyer or its Affiliates, members, or shareholders, or the Property, having any Liability or responsibility for, or being required to satisfy in any manner, whether in law or in equity, whether by payment, setoff or otherwise, directly or indirectly, (i) any claim against the Debtor or against any insider of the Debtor, or (ii) any lien, claim, encumbrance, or other interest.

13.     Upon the Closing, and except as otherwise expressly provided in the Asset Purchase Agreement with respect to Assumed Liabilities, the Buyer shall not be liable for any claims against, and Liabilities of, the Debtor or any of the Debtor's predecessors or Affiliates.

14.     The Buyer has given substantial consideration under the Asset Purchase Agreement to the Debtor's estates. The consideration given by the Buyer shall constitute valid and valuable consideration for the releases of any potential claims of successor or transferee Liability of the Buyer, which releases shall be deemed to have been given in favor of the Buyer by all holders of liens, claims, encumbrances, and other interests against the Debtor or the Property.

**No Fraudulent Transfer**

15.     The consideration provided by the Buyer under the Asset Purchase Agreement constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration, and fair value under any other applicable Laws of the United States, any state, territory, or possession thereof, or the District of Columbia. The consideration provided by the Buyer for the Property under the Asset Purchase

Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

## Good Faith

16.      The Asset Purchase Agreement and the Sale Transaction are undertaken by the Buyer without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Asset Purchase Agreement and the Sale Transaction shall not affect the validity of the sale of the Property to the Buyer, unless this Order is duly stayed pending such appeal. The Buyer is a good faith purchaser of the Property and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.

## Additional Provisions

17.      The Buyer shall assume the Assumed Liabilities set forth in the Asset Purchase Agreement.

18.      All Persons that are in possession of some or all of the Property as of or after the Closing are hereby directed to execute such documents and take all other actions as may be necessary to surrender possession of such Property to the Buyer as of the Closing or at such time thereafter as the Buyer may request.  The Debtor agrees to exercise commercially reasonable efforts to assist the Buyer in assuring that all Persons that are presently, or on the Closing Date may be, in possession of some or all of the Property will surrender possession of the Property either to (i) the Debtor before the Closing Date or (ii) the Buyer on or after the Closing Date.

19.      This Order is and shall be binding upon and shall govern acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of fees, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other

Persons, who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments that reflect that the Buyer is the assignee and owner of the Property free and clear of all liens, claims, encumbrances, and other interests, except for the Permitted Post-Closing Liens and the Assumed Liabilities, (all such entities being referred to as "***Recording Officers***"). All Recording Officers are authorized and specifically directed to strike recorded Liens, claims, encumbrances, and interests against the Property recorded prior to the date of this Order unless the Asset Purchase Agreement expressly provides that the Buyer is acquiring the Property subject to such claims, Liens, and interests.

20.     To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Property sold, transferred, or conveyed to the Buyer on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale Transaction.

21.     Following the Closing, no holder of any lien, claim, encumbrance, or other interest on the Property or other party in interest may interfere with the Buyer's use and enjoyment of the Property based on or related to such lien, claim, encumbrance, or other interest, or any actions that the Debtor may take in their chapter 11 cases, and no party may take any action to prevent, interfere with or otherwise enjoin consummation of the Sale Transaction.

22.     Except as otherwise expressly provided in the Asset Purchase Agreement, the Buyer shall have no obligation to pay wages, bonuses, severance pay, or any other payment with respect to employees or former employees of the Debtor. Except as otherwise expressly provided in the Asset Purchase Agreement, the Buyer shall have no Liability with respect to any employee welfare or retention, benefit and/or incentive plan to which any Debtor is a party and relating to

the Property (including, without limitation, arising from or related to the rejection or other termination of any such agreement), and, except as expressly provided in the Asset Purchase Agreement, the Buyer shall in no way be deemed a party to or assignee of any such agreement, and no employee of the Buyer shall be deemed in any way covered by or a party to any such agreement, and all parties to any such agreement are hereby enjoined from asserting against the Buyer any and all claims arising from or relating to such agreement. All notices, if any, required to be given to the Debtor's employees prior to Closing pursuant to any federal or state law, shall be the sole responsibility and obligation of the Debtor, and the Buyer shall have no duties, responsibility, or Liability therefor.

23. The recitation, in the immediately preceding paragraph of this Order, of specific agreements, plans, or statutes is not intended, and shall not be construed, to limit the generality of the categories of Liabilities, debts, commitments, or obligations referred to therein.

24. Except as expressly permitted or otherwise specifically provided by the Asset Purchase Agreement or this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, holding interests of any kind or nature whatsoever against or in the Debtor or the Property (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtor, the Property, the ownership or operation of the Property prior to the closing of the sale, or the sale of the Property are forever barred, estopped, and permanently enjoined from asserting against the Buyer, its successors or assigns, its property, or the Property, such persons' or entities' interests.

25. No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transactions authorized herein, including the Asset Purchase Agreement and the Sale Transaction.

26. The terms and provisions of the Asset Purchase Agreement, the ancillary agreements, and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor, the Buyer, and their respective Affiliates, successors, and assigns, their estates, all creditors of (whether known or unknown) and holders of equity interests in the Debtor, and any affected third parties, notwithstanding the dismissal of the Debtor's case or any subsequent appointment of any trustee under any chapter of the Bankruptcy Code or conversion of the Debtor's case to a case under chapter 7, as to which trustee such terms and provisions likewise shall be binding and not subject to rejection or avoidance. The Asset Purchase Agreement, the Sale Transaction and this Order shall be enforceable against and binding upon, and shall not be subject to rejection or avoidance by, any chapter 7 or chapter 11 trustee appointed in the Bankruptcy Case. Further, nothing contained in any plan confirmed in this chapter 11 case or any order confirming any plan or any other order entered in this case shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Order.

27. The Asset Purchase Agreement and any related agreements, documents, or other instruments may be amended by the parties in a writing signed by such parties without further order of the Court, provided that any such amendment does not have a material adverse effect on the Debtor or the Debtor's estate.

28. The failure to include specifically any particular provision of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being

the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety.

29.     To the extent of any inconsistency between the provisions of this Order, the Asset Purchase Agreement, and any documents executed in connection therewith, the provisions contained in this Order, the Asset Purchase Agreement, and any documents executed in connection therewith shall govern, in that order.

30.     Nothing in this Order shall affect the rights, if any, of mineral lien holders against non-Debtor working interest owners, or the rights, if any, of such non-Debtor working interest owners against such mineral lien holders, and provided that this reservation of rights shall not create any rights in favor of such mineral lien holders or such non-Debtor working interest owners.

31.     Nothing in this Order, the Asset Purchase Agreement or any document executed in connection with the consummation thereof shall authorize or constitute a transfer of title to property which is excluded from the property of the Debtor's estates pursuant to section 541(b)(4) of the Bankruptcy Code.

32.     Notwithstanding anything to the contrary in the Bid Procedures or the Bid Procedures Order, [PARTY] shall keep its Back-Up Bid (as defined in the Bid Procedures) open and irrevocable until the first to occur of (i) sixty (60) days after the completion of the Auction, (ii) consummation of the transaction with the Successful Bidder, or (iii) the Back-Up Bidder's receipt of notice from the Debtor of the release by the Debtor of the Back-Up Bidder's obligations. If the Buyer fails to consummate the approved Sale Transaction because of a breach or failure to perform on the part of the Buyer or otherwise, the Debtor shall be authorized, but not required, to deem [PARTY] the Buyer and to consummate the sale with [PARTY] without

further order of this Court. In such event, [PARTY] shall be deemed the Buyer and the Back-Up Bidder Agreement shall be deemed the Asset Purchase Agreement for purposes of this Order.

33.    The provisions of this Order are non-severable and mutually dependent. Headings are included in this Order for ease of reference only.

34.    The provisions of this Order authorizing the sale and assignment of the Property free and clear of all liens, claims, encumbrances, and other interests shall be self-executing, and notwithstanding the failure of the Debtor, the Buyer, or any other party to execute, file, or obtain releases, termination statements, assignments, consents, or other instruments to effectuate, consummate and/or implement the provisions hereof, all liens, claims, encumbrances, and other interests (other than those expressly assumed by the Buyer or permitted to survive under the Asset Purchase Agreement) on or against such Property, if any, shall be deemed released, discharged, and terminated.

35.    From time to time, as and when requested by any Party, each Party to the Asset Purchase Agreement shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Sale Transaction, including such actions as may be necessary to vest, perfect, or confirm, of record or otherwise, in Buyer its right, title, and interest in and to the Property.

36.    Notwithstanding the provisions of Bankruptcy Rule 6004(h) and 6006(d), this Order shall be effective and enforceable immediately and shall not be stayed. Time is of the essence in closing the Sale Transaction and the Debtor and the Buyer intend to close the Sale Transaction as soon as practicable. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being dismissed as moot.

37.     This Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Asset Purchase Agreement, all amendments thereto, and any waivers and consents thereunder, and each of the agreements executed in connection therewith, including, but not limited to, retaining jurisdiction to (i) compel delivery of the Property to the Buyer; (ii) interpret, implement, and enforce the provisions of this Order and the Asset Purchase Agreement; (iii) adjudicate, if necessary, any and all disputes arising out of, concerning, or otherwise relating in any way to the Sale Transaction; and (iv) protect the Buyer against any Liens, encumbrances, claims, and interests in the Property of any kind or nature whatsoever.

# # #