

**Dated: February 01, 2019.**

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
**TONY M. DAVIS
UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 17-11540-TMD |
| | § | |
| IO AT TECH RIDGE, LP | § | CHAPTER 11 |
| Debtor. | § | |

**MEMORANDUM OPINION**

The debtor, former owner of an incomplete apartment complex, objects to a subcontractor's claim and argues that the subcontractor must look to payment from a payment bond instead. The subcontractor contends that the payment bond is deficient because it lacks several statutorily mandated terms. But the statute contains a savings clause that allows a bond to qualify if the bond was filed in attempted compliance, or with intent to comply, with the statute.

Here, the owner both attempted and intended to comply with the statute, and the bond contained all the provisions needed to protect the subcontractors.

**I.     FACTS**

IO at Tech Ridge was formed to build a 351-unit apartment complex in North Austin.[1]

---

[1] Am. Obj. to Claim, ECF No. 185, at 2:3.

1

The development was largely funded through a loan acquired from Berkadia and endorsed by the U.S. Department of Housing and Urban Development.[2] In 2014, IO and ICI Construction entered into a construction contract and began construction.[3] With the contract, IO signed a Payment Bond for $39.7 million that was issued by Hartford Fire Insurance.[4] Disputes arose between IO and ICI that caused IO to terminate the construction contract in 2016.[5] Litigation then ensued in state court.[6] A few months later, Power Design, an electrical subcontractor on the project, intervened in the lawsuit.[7] It contends that ICI owes it over $1.5 million.[8]

Over a year later, IO filed bankruptcy and Power Design filed a claim in the bankruptcy case for $714,809 based on a statutory Mechanic's and Materialman's lien that it had filed against the property before litigation began.[9] Meanwhile, the property was sold and the IO, after paying the debt owed to Berkadia, taxes, and costs of sale, retained about $409,000 in net sales proceeds.[10] Power Design's lien, if it has one, attaches to those proceeds.

In September 2018, IO, ICI, and Hartford entered into a settlement agreement.[11] Under the settlement agreement, ICI agreed to pay $300,000 to IO for the benefit of IO's bankruptcy estate, to indemnify IO for claims asserted by any subcontractor of ICI related to the construction project, and the parties agreed to keep the Payment Bond in place.[12]

---

[2] Am. Obj. to Claim, ECF No. 185, at 2:3.
[3] Am. Obj. to Claim, ECF No. 185, at 2:4.
[4] Am. Obj. to Claim, ECF No. 185, at 2:4; Ex. B.
[5] Am. Obj. to Claim, ECF No. 185, at 2:5.
[6] Am. Obj. to Claim, ECF No. 185, at 2:6.
[7] Resp. to Obj. to Claim, ECF No. 176:1:1.
[8] Resp. to Obj. to Claim, ECF No. 176:1:1.
[9] Am. Obj. to Claim, ECF No. 185, at 2:7-9. In February 2018, Power Design removed the state court lawsuit to bankruptcy court. *IO at Tech Ridge, LP v. Hartford Fire Ins. Co.*, Adv. No. 18-01015 (removed Feb. 1, 2018). IO then moved to remand the lawsuit back to state court. *IO at Tech Ridge, LP v. Hartford Fire Ins. Co.*, Adv. No. 18-01015, Mtn. Abstain and Remand, ECF No. 6. After a hearing on the motion, the Court issued a memorandum opinion and entered an order abstaining and remanding the suit to state court. *IO at Tech Ridge, LP v. Hartford Fire Ins. Co.*, Adv. No. 18-01015, ECF Nos. 16, 17.
[10] IO Ex. 17.
[11] Order Granting Mtn. to Comp. and Settle, ECF No. 175.
[12] Mtn. to Comp. and Settle, ECF NO. 173 at 4:11, Ex A.

## II. ANALYSIS

IO now objects to Power Design's lien arguing, in part, that it cannot assert its lien because of the Payment Bond issued by Hartford.[13] In support of its lien, Power Design argues mainly that the Payment Bond is flawed because it does not comply with all of the statutory requirements.[14]

When a payment bond meets the statutory requirement in section 53.202 of the Texas Property Code, claimants are barred from filing liens against the property owner or seeking foreclosure of its lien on the owner's property.[15] Instead, claimants must seek payment from the payment bond.[16]

Section 53.202 states that the payment bond must:

> (1) be in a penal sum at least equal to the total of the original contract amount;
> (2) be in favor of the owner;
> (3) have the written approval of the owner endorsed on it;
> (4) be executed by:
> > (A) the original contractor as principal; and
> > (B) a corporate surety authorized and admitted to do business in this state and licensed by this state to execute bonds as surety, subject to Section 1, Chapter 87, Acts of the 56th Legislature, Regular Session, 1959 (Article 7.19-1, Vernon's Texas Insurance Code);
> (5) be conditioned on prompt payment for all labor, subcontracts, materials, specially fabricated materials, and normal and usual extras not exceeding 15 percent of the contract price; and
> (6) clearly and prominently display on the bond or on an attachment to the bond:
> > (A) the name, mailing address, physical address, and telephone number, including the area code, of the surety company to which any notice of claim should be sent; or
> > (B) the toll-free telephone number maintained by the Texas Department of Insurance under Subchapter B, Chapter 521,

---

[13] Am. Obj. to Claim, ECF No. 185, at 4-5:11.
[14] Resp. to Am. Obj. to Claim, ECF No. 176 at 3:14-16.
[15] Tex. Prop. Code § 53.201(b); *New AAA Apartment Plumbers, Inc. v. DPMC-Briarcliff, L.P.*, No. 14-05-00485-CV, 2006 WL 2827275, at *3 (Tex. App.—Houston [14th Dist.] Oct. 5, 2006, no pet.) (mem. op.).
[16] Tex. Prop. Code § 53.201(b).

3

Insurance Code, and a statement that the address of the surety company to which any notice of claim should be sent may be obtained from the Texas Department of Insurance by calling the toll-free telephone number.[17]

Exacting compliance with these elements will mean the bond qualifies as a statutory payment bond.[18] But the statute also provides that "a bond shall be construed to comply with this subchapter . . . if the bond: (1) is furnished and filed in *attempted* compliance with this subchapter; or (2) evidences by its terms *intent* to comply with this subchapter."[19] Unsurprisingly, this provision has spawned litigation.

In *Sherwin-Williams Co. v. American Indemnity Co.*, the Texas Supreme Court was called upon to determine the validity of a bond that contained this language: "The parties execute this bond with the intent to comply with the [payment bond statute]."[20] Yet the bond in that case was in an amount less than half the amount of the contract at issue.[21] Even though the bond would "literally" satisfy the language of the savings clause, the Supreme Court found that it was invalid.[22] Essentially, the Supreme Court determined that the expressed intent to comply with the statute was belied given that the bond on its face failed the essential purpose of the statute—to get everyone paid.[23]

In *Sentry Insurance Co. v. Radcliff Materials of Texas, Inc.*, a materials supplier for a subcontractor sued an insurance company seeking recovery from a payment bond.[24] The Texas

---

[17] Tex. Prop. Code § 53.202.
[18] *New AAA Apartment Plumbers, Inc. v. DPMC-Briarcliff, L.P.*, No. 14-05-00485-CV, 2006 WL 2827275, at *3 (Tex. App.—Houston [14th Dist.] Oct. 5, 2006, no pet.) (mem. op.).
[19] Tex. Prop. Code § 53.211(a) (emphasis added).
[20] 504 S.W.2d 400, 402 (Tex. 1973). Chapter 53 of the Texas Property Code incorporates the Hardeman Act. *Laughlin Environmental, Inc. v. Premier Towers, L.P.*, 126 S.W.3d 668, 671, n.4 (Tex. App—Houston [14th Dist.] Jan. 29, 2004, no pet.) (mem. op.).
[21] *Sherwin-Williams Co. v. American Indemnity Co.,* 504 S.W.2d 400, 401 (Tex. 1973).
[22] *Id.* at 402.
[23] *Id.*
[24] *Sentry Insurance Co. v. Radcliff Materials of Texas, Inc.*, 687 S.W.2d 437, 438-39 (Tex. App—Houston [14th Dist.] Feb. 14, 1985, no pet.) (mem. op.).

Court of Appeals for the 14th District held that the payment bond did not meet the statutory requirements for four reasons.[25] First, it was not issued in favor of the owner; instead, it was issued in favor of the original contractor.[26] Second, it was not signed by the contractor as principal; instead, it was signed by Loma, a materials supplier.[27] Most importantly, the bond was not conditioned on prompt payment of all subcontractors and materialmen; instead, it was conditioned on Loma not paying one contractor The court also found that there was no evidence of attempted compliance, or an intent to comply with the statute, because the bond, like the bond the *Sherwin-Williams* case, failed to protect the economic interests of all subcontractors and materialmen.[28]

Almost twenty years later, the court again looked at this issue in *Laughlin Environmental, Inc. v. Premier Towers, L.P.*[29] In that case, the bond at issue did not reference the Texas Property Code or otherwise say that it was intended to be a statutory payment bond.[30] It also failed to track the terms listed in the statute, like the provisions requiring prompt payment, and—fatally under the *Sherwin-Williams* case—was not equal to the original contract amount.[31] Because the bond was less than the contract amount and potentially insufficient to provide full payment to all laborers, subcontractors, and materialmen, the court had little difficulty declaring that it did not qualify under the statute.[32]

Then, in *New AAA Apartment Plumbers, Inc v. Briarcliff, L.P.*, the Texas Court of

---

[25] *Sentry Insurance Co. v. Radcliff Materials of Texas, Inc.*, 687 S.W.2d 437, 439-40 (Tex. App—Houston [14th Dist.] Feb. 14, 1985, no pet.) (mem. op.).
[26] *Id.* at 440.
[27] *Id.*
[28] *Id.*
[29] *Laughlin Environmental, Inc. v. Premier Towers, L.P.*, 126 S.W.3d 668 (Tex. App—Houston [14th Dist.] Jan. 29, 2004, no pet.) (mem. op.).
[30] *Id.* at 672-73.
[31] *Id.* at 673-74.
[32] *Id.* at 674-75.

Appeals ruled on a payment bond that showed attempted compliance.[33] Unlike the bonds discussed above, the bond was conditioned on prompt payment for all labor and materials and the amount of the bond was equal to the contract amount.[34] The bond also explicitly referenced the statute, was in favor of owner, and was only missing the language in section 53.202(5) that required prompt payment "*not exceeding 15 percent of the contract price*."[35] The Court found that this omission was not a "substantial defect."[36] The bond contained enough provisions to assure full payment, and attempted compliance was established by the record.[37]

Here, the bond is enough to make sure all subcontractors are paid. First, it is equal to the contract amount.[38] Second, it is conditioned on payment within 90 days.[39] It also shows an intent to comply because the parties modified the form HUD bond to add a reference section 53.001, et seq. of the Texas Property Code and a signature line for the owner, IO, as required by section 53.202(3).[40]

Like the bond in *New AAA*, it lacks the prompt payment "not exceeding 15 percent of the contract price" language, but as in *New AAA,* the lack of this language does not preclude a finding that the parties attempted compliance with the statute.[41] And although the bond here does not contain the words "prompt payment," it does contain a more precise provision allowing claimants to sue if they are not paid within 90 days, which is sufficiently prompt.[42]

As Power Design points out, the bond also lacks the phone number for the surety and the

---

[33] *New AAA Apartment Plumbers, Inc. v. DPMC-Briarcliff, L.P.*, No. 14-05-00485-CV, 2006 WL 2827275, at *4-5 (Tex. App.—Houston [14th Dist.] Oct. 5, 2006, no pet.).
[34] *Id.*
[35] *Id.* at *4.
[36] *Id.* at *4-5.
[37] *Id.*
[38] IO Ex. 1; Am. Obj. to Clam, ECF No. 185, Ex. B at 17.
[39] IO Ex. 1; Am. Obj. to Claim, ECF No. 185, Ex. B at 18:5.
[40] IO Ex. 1; Am. Obj. to Claim, ECF No. 185, Ex. B at 20.
[41] *New AAA Apartment Plumbers,* 2006 WL 2827275, at *4-5.
[42] IO Ex. 1; Am. Obj. to Claim, ECF No. 185, Ex. B at 18:5.

Texas Department of Insurance.[43] But these immaterial omissions do not overcome the explicit cite the statute in the bond, which shows the parties' intent that the bond fall under the statute. And the lack of this information does not prevent the bond from accomplishing its essential purpose: getting everyone paid.

As a result, the Payment Bond is a valid bond under section 53.202 and Power Design must look to payment only from the bond.

### III. CONCLUSION

The Court thus finds that the Amended Objection to Claim [ECF No. 185] is sustained.[44]

---

[43] Resp. to Obj. to Claim, ECF No. 176:3-4:15.
[44] Power Design also asks that I abstain from ruling on this issue, as I had abstained from taking on the state court lawsuit. But, as stated in that ruling, the critical inquiry in remand and abstention matters is will allowing the state court to decide the issue delay the administration of the estate. Here, with the settlement reached between IO and the contractor, and the property sold, this is one of the few matters left to address before the case can be closed.